### State v. Patrick McCune.

Where the prisoner, whilst walking in a public street by night with a stranger, with the pretended purpose of guiding him to a livery stable where he might obtain a conveyance to carry him home, suddenly seized the watch of the stranger, which was in his vest watch pocket, with violence enough to break the silk ribbon watch guard, half an inch wide, about his neck, and exclaiming, "Damn you, I will have your watch," fled with it, pursued by the stranger; *Held*, that this was highway robbery, as distinguished from stealing from the person, notwithstanding the stranger, who was a witness, could not swear that he feared anything at the time, except the loss of his watch; the threatening announcement by the prisoner, at the time, of his intent, accompanied by force sufficient to enable him to accomplish it, aggravating his offence to highway robbery, although surprise greatly aided him.

THIS was an indictment charging highway robbery in one count, and stealing from the person, in another, of a silver watch from one Boardman, who, on the trial before Bosworth, J., testified, that " on the night in question, he having been out to Cranston, a town adjoining the city of Providence, to visit his mother, arrived in Providence about ten o'clock in the evening, on his way to Valley Falls, where he resided ; that he went into a place in Canal-street, Providence, for the purpose of inquiring where he could procure a conveyance to take him home ; that the prisoner, a stranger to him, offered his services as a guide; that the witness and the prisoner started off together, arm in arm ; that they went to two livery stables, and were refused a conveyance ; that the witness, thinking, from these refusals, that he had not got into good company, left the prisoner, and went into another place to inquire for a conveyance ; that shortly after he had started out again, he was again joined by the prisoner, who put one of his arms through the arm of the witness, and with the hand of his other arm seized the watch of the witness, exclaiming, " Damn you, I will have your watch," and fled with it, pursued by the witness. As the witness testified, the watch was in his vest watch pocket, and secured by a silk ribbon watch guard about his neck; that in the taking from him of his watch, the prisoner broke the watch guard, which was about half an inch wide and somewhat worn, a part thereof being left about the neck of the witness, and the

other part attached to the watch, as appeared when the watch was shortly after recovered. Upon being asked "if he was in fear?" the witness replied, "I was much afraid that he would get my watch."

The jury, under the instructions of the judge presiding at the trial, returned a verdict of guilty of highway robbery; but it appearing that the crime charged was not cognizable by a single justice, the verdict was set aside, and the case was submitted to the full court upon a statement embodying the above facts, with an agreement, that if the court were of the opinion that they constituted the crime of highway robbery, as distinguished from stealing from the person, the prisoner should plead guilty of the former, otherwise, of the latter crime.

The question was submitted to the court without argument by *Hart*, attorney-general, for the state, and by *Ripley*, for the prisoner.

AMES, C. J. We all agree that this is a case of robbery; upon the ground, that the felonious taking was effected by force. The passing by the prisoner of his arm through the arm of the prosecutor, and the violence used by him in breaking the ribbon guard about the neck of the prosecutor, accompanied by the prisoner's open announcement at the time, of his determination to take the watch, make, in our judgment, a stronger case of taking by violence than *Mason's case*, Russ. & Ryan, 410, in which the taking was accompanied only by the force necessary, by two or three jerks, to break the steel guard chain about the neck of the prosecutor, without any announcement of purpose, by way of threat, or any laying on of hands. The expressed determination, at the time, of the felonious intent, accompanied by the degree of force requisite to carry the intent into effect, make this a clear case of a taking by *open* violence, as distinguished from a secret taking, or a mere snatching by surprise from the hand of another. If there be violence sufficient to effect the evil intent, its degree does not seem to be of importance in characterizing the crime; as appears from the case mentioned by Holroyd, J., (1 Lewin, C. C. 300,) in which the judges held, that the running of the prisoner against the person of another, for the purpose of diverting his attention whilst he

picked his pocket, was sufficient force to make the taking, robbery, since it was used with that intent. The fact, that surprise aided the force employed by the prisoner to enable him to accomplish his purpose, will not prevent the force employed from aggravating the case to one of robbery.

The prisoner was accordingly sentenced for the crime of highway robbery.