STATE v. H. W. SAWYER AND WILLARD MUSE.

(Filed 1 March, 1944.)

**1. Robbery § 1a—**

Upon an indictment for highway`robbery at common law, it is not necessary to prove both violence and putting in fear—proof of either is sufficient.

**2. Same—**

Force in the offense of robbery may be either actual or constructive. Although actual force implies personal violence, the degree of force is immaterial, so long as it is sufficient to compel the victim to part with his property. Constructive force includes all demonstrations of force, menaces or other means, however slight, by which the person robbed is put in fear sufficient to prevent resistance.

**3. Robbery §§ 1a, 3—**

The kind and value of property taken in highway robbery is not material; and an allegation of ownership is sufficient when it negatives the idea of the accused taking his own property.

**4. Criminal Law § 41b: Evidence § 27—**

Incompetent evidence, by a State's witness in a criminal trial, brought out on re-direct examination in explanation of testimony elicited under cross-examination, is competent.

**5. Criminal Law § 53d—**

Where all the evidence, in the trial of a criminal action, if believed by the jury, tends to show that the crime charged was committed as alleged and there is no evidence to show the commission of a crime of less degree, there is no error for the court to fail to instruct the jury that they may acquit the defendant of the crime charged and convict him of an assault or less degree of the crime charged.

Appeal by defendants from *Thompson, J.,* at December Special Term, 1943, of Camden.

Criminal prosecution upon indictment charging defendants with highway robbery.

The bill of indictment charges, in substance, that on 14 August, 1943, upon "a common and public highway" at and in the county of Camden, State of North Carolina, H. W. (*alias* Bill) Sawyer, Willard Muse and Shelton Casper did unlawfully and feloniously assault, and put in fear Romeo J. LaBurque, Charles Sipes and Enrico N. Oliverine, and did then and there feloniously and violently and against their will, and from their person, take, steal and carry away fourteen dollars in money of the goods and chattels of the said Romeo J. LaBurque, Charles Sipes and Enrico N. Oliverine, against the form of the statute, etc.

Upon the trial below the State offered as witnesses Romeo J. La-Brueque, spelled in indictment LaBurque, and Enrico N. Oliverine, whose testimony tends to show that they and Charles Sipes, three sailors in the United States Navy, having come into Elizabeth City, North Carolina, from a base near-by, on afternoon of Saturday, 14 August, 1943, and attended a picture show, decided about 11:30 o'clock p.m. "to thumb a ride" to Norfolk. A man, whose identity does not appear in the record, came along in a car and picked them up. He asked if they would like to go to Chantilly Beach, which is in Camden County, about two miles on a dirt road off the Elizabeth City to Norfolk highway. He said that "there was a little action there," that they could have a good time there; that he had just left and taken the girl home. They decided to go there, but when they arrived the place was closed. After looking around, the sailors started walking back toward the highway, when the man who had taken them there called them back and asked if they wanted to go or to ride to Norfolk with him. They accepted the invitation and got in the car. Whereupon, before the sailors had time to close the door four other men jumped in the car. There were three, including the driver on the front seat, and five including the three sailors

on the back seat.. The sailors protested that the car was crowded, and spring would break, saying that they "would just as soon walk," and started to get out. But the driver said it was no trouble at all, and started the car and "took some back road up there." After traveling about fifteen minutes, one of the men said he wanted to get out and the car was stopped. All except the sailors got out, and some one of them asked the sailors if they wanted to get out, or told them to get out, but the sailors replied in the negative. The question was repeated, according to testimony of Oliverine, and the sailors again said "No." Whereupon, the five men, including the driver, got around the car, at the doors and windows, and opened doors . . . one of them pointed out in the court-room as one of defendants, saying to the sailors, "All right, boys, this is a shake-down," or "This is a shake-down," and upon being asked by Oliverine what he meant, said again, "Just a shake-down." Thereupon $10.00 was taken from LaBrueque, $3.40 from Oliverine, and $3.60 from Sipes. The driver of the car reached through the door and took the billfold from the right front pocket of LaBrueque, and got out in the front light, looked through the billfold, took out the money and gave the billfold back to LaBrueque. In like manner the money was taken from Oliverine and Sipes by others. In the taking the defendants actively participated. The five men "were quite men" compared to the sailors. Oliverine on being asked if he knew who took the money from Sipes replied: "I don't know who took his money, I was pretty well occupied with a man who was taking care of me. I did not say it was the man who took my money, because as soon as he took care of me I didn't even look at him. I was ready to bust a blood vessel." Afterwards, according to testimony of LaBrueque, they, the men, tried to force the sailors to drink from a bottle of liquor, which they pretended to do but did not do. Oliverine testified, "They came in the car and that fellow over there practically demanded we take a drink or else we would be thrashed . . . it seemed like it was hours but I could not say how long it was." Then the men took the sailors back to the Chantilly Road and the Elizabeth City-Norfolk highway, let them out, and gave them the wrong direction to Elizabeth City, and then put out the headlights on the car and started and left.

The sailors obtained a ride to Elizabeth City and "went straight to the police station and talked to Corporal Laws," a member of the State Highway Patrol, and reported they had been robbed of the money in the vicinity of Chantilly Beach. Later in the presence of the officer, as well as on the trial, the defendants Sawyer and Muse were identified by LaBrueque and Oliverine, who were unable to identify Casper.

Patrolman Laws testified as witness for the State by way of corroborating in part witnesses LaBrueque and Oliverine. Then on cross-exami-

nation he was asked if he did not fail to serve subpoena on Sipes because Sipes did not identify the defendants. The officer answered in the negative. Then upon redirect examination and over objection by defendants, the solicitor asked these questions and the officer gave the answers indicated:

"Mr. Simpson asked you if it was because Sipes could not identify these men that you permitted him to leave. I ask you to tell the jury if Sipes, at the time you carried the men down to the Naval Air Station for the line-up, whether or not he identified Muse as one of the men who participated in the Robbery? A. He did.

"Q. I ask you to tell the jury whether, at that time Sipes identified Bill Sawyer as being one of the participants in the robbery? A. He did.

"Q. Was there any reason for your excusing him other than the fact that he had a leave of absence from his Commanding Officer? A. None. I had no control over the man."

At the close of State's evidence the court directed verdict in favor of defendant Casper, but denied motion for judgment as of nonsuit in behalf of defendants Sawyer and Muse. Exception. Thereupon, the defendants Sawyer and Muse, as witnesses in their behalf, pleaded an alibi, and denied being present at the time of the alleged robbery, and denied any participation therein, and offered other testimony in corroboration of their alibi. These defendants further offered testimony tending to break down the identification of them by the State's witnesses LaBrueque and Oliverine. The motions for judgment as of nonsuit at the conclusion of all the testimony were denied. Exception.

Verdict: "Guilty as charged as to each of the defendants."

Judgment: As to each of the defendants, imprisonment in State Prison for not less than three nor more than five years.

Defendants appealed to Supreme Court and assign error.

*Attorney-General McMullan, Assistants Attorneys-General Patton & Rhodes for the State.*

*M. B. Simpson for defendants, appellants.*

WINBORNE, J. Defendants in the main present and stress for error three points:

1. It is contended that the court should have nonsuited the case, (a) "because no force was shown to have been used," and (b) that there is a fatal variance between the indictment and the evidence in that the indictment charges defendants with taking $14.00 in money of the goods and chattels of LaBrueque, Sipes and Oliverine, and the evidence shows that LaBrueque lost $10,00, Oliverine $3.40, and Sipes $3.60, and neither had any interest in the money of the other, and the amount taken totaled

$17.00 and not $14.00 as charged, and in that the evidence shows no joint taking.

As to the first ground for nonsuit: The charge against defendants is a common law offense. Decisions of this Court with regard thereto adhere to the principle that upon an indictment for highway robbery at common law it is not necessary to prove both violence and putting in fear—proof of either is sufficient. *S. v. Burke*, 73 N. C., 83; *S. v. Brown*, 113 N. C., 645, 18 S. E., 51; *S. v. Holt*, 192 N. C., 490, 135 S. E., 324.

Generally the element of force in the offense of robbery may be actual or constructive. Although actual force implies personal violence, the degree of force used is immaterial, so long as it is sufficient to compel the victim to part with his property or property in his possession. On the other hand, under constructive force are included "all demonstrations of force, menaces, and other means by which the person robbed is put in fear sufficient to suspend the free exercise of his will or prevent resistance to the taking . . . No matter how slight the cause creating the fear may be or by what other circumstances the taking may be accomplished, if the transaction is attended with such circumstances of terror, such threatening by word or gesture, as in common experience are likely to create an apprehension of danger and induce a man to part with his property for the sake of his person, the victim is put in fear." 46 Am. Jur., 146.

Applying these principles to case in hand, the evidence, taken in the light most favorable to the State as we must do in considering a motion for judgment as in case of nonsuit, is sufficient to take the case to the jury. From the words used and acts done under the circumstances portrayed in evidence for the State, a robbery is manifest. The term "shake-down" has in slang a well understood meaning. According to Webster, when used as a verb, it means "to force (one) to give up money . . ."; and as a noun, "shake-down" is an "act or process of shaking down, hence, slang, an instance or means of depriving one of money by persuasion or compulsion." In the case in hand the evidence tends to show that the five men were acting in concert. The number of them and their words, acts and attitude assumed toward the sailors are such as in common experience are likely to create an apprehension of danger and to induce a man to part with his property for the sake of his person. The jury could reasonably infer therefrom at least that the money was taken from the sailors through fear.

As to the second ground for nonsuit: In an indictment for robbery the kind and value of the property taken is not material. The gist of the offense is not the taking, but a taking by force or the putting in fear. *S. v. Burke, supra, S. v. Brown, supra*. Moreover, in an indictment for

robbery the allegation of ownership of the property taken is sufficient when it negatives the idea that the accused was taking his own property. See 54 C. J., 1039, 46 Amer. Jur., 143. For these reasons there is no variance. The authorities cited by defendants are distinguishable.

2. The point is made that the testimony of the witness Laws, a corporal of the State Highway Patrol, that Sipes, the sailor who was not present at the trial, had identified the defendants as participants in the alleged robbery of the three sailors, is hearsay and incompetent. Conceding that the evidence may have been incompetent on direct examination, it was brought out on redirect examination in explanation of testimony elicited under cross-examination by defendants. For this purpose it was competent. *S. v. Orrell,* 75 N. C., 317; *Jordan v. Motor Lines,* 182 N. C., 559, 109 S. E. 566, and cases cited.

3. The court having instructed the jury that, as to each defendant, one of two verdicts, guilty as charged, or of not guilty, might be returned, defendants contend that upon the evidence in the case, the court erred in failing to further instruct the jury that a verdict might be rendered of guilty of an attempt to commit the crime charged, or guilty of a lesser degree of the same offense, or guilty of an assault.

In support of this contention defendants invoke the provisions of G. S., 15-169, formerly C. S., 4639, to the effect that on the trial of any person charged with a felony, and the crime charged includes an assault against the person, it is lawful for the jury to acquit of the felony and to find a verdict of guilty of assault against the person indicted, if the evidence warrants such finding. Defendants also invoke in support of this contention the provisions of G. S., 15-170, formerly C. S., 4640 relating to conviction of less degree or of an attempt to commit the same crime. They rely upon the application of the statutes in the case of *S. v. Holt, supra.* That case is distinguishable from the one in hand. There, while the evidence for the State made out a crime for highway robbery only, the evidence of defendants tended to show that there was no robbery at all for that the State's witness voluntarily paid the money to defendant, Holt, and, after such voluntary payment, was thereafter assaulted. Here the evidence for the State tends to show the crime of robbery only, and the defense of defendants is that of an alibi.

No contention was made by defendants in the trial court that upon the evidence offered the jury should render against them a verdict of guilty of a lesser degree of the same offense, or guilty of an attempt to commit the offense so charged, or guilty of an attempt to commit a less degree of the same crime, or guilty of an assault.

In the case of *S. v. Cox,* 201 N. C., 357, 160 S. E., 358, *Connor, J.,* speaking for the Court as to provisions of G. S., 15-170, then C. S., 4640, states that "the statute is not applicable, where, as in the instant

case, all the evidence for the State, uncontradicted by any evidence for the defendant, if believed by the jury, shows that the crime charged in the indictment was committed as alleged therein." And, concluding, it is there said: "Where all the evidence at the trial of a criminal action, if believed by the jury, tends to show that the crime charged in the indictment was committed as alleged therein, and there is no evidence tending to show the commission of a crime of less degree, it is not error for the trial court to fail to instruct the jury that they may acquit the defendant of the crime charged in the indictment and convict him of a crime of less degree," citing *S. v. Ratcliff*, 199 N. C., 9, 153 S. E., 605. See also *S. v. Jackson*, 199 N. C., 321, 154 S. E., 402; *S. v. Vick*, 213 N. C., 235, 195 S. E., 779; *S. v. Hairston*, 222 N. C., 455, 24 S. E. (2d), 342, and cases cited. In these cases the sole defense was that of an alibi, and it is held in *S. v. Jackson, supra*, that the provisions of G. S., 15-169, and -170, then C. S., 4639 and 4640, apply only where there is evidence tending to show defendant is guilty of a crime of lesser degree than that charged in the indictment, citing cases.

After careful consideration of all assignments of error, we are of opinion that the case was one for the jury, and that no prejudicial error was committed on the trial.

Hence, in the judgment below we find

No error.