280 A.2d 324.

STATE *vs.* GERTRUDE M. AMADO.

AUGUST 4, 1971.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J.  Patrolman Austin J. Westerberg has been a member of the Providence Police Department for over 20 years.  At about 3 p.m. on the afternoon of Saturday, July 22, 1967, he was on duty near the City Hall when he observed the defendant's son driving an automobile the wrong way on a one-way street.  The defendant was a front-seat passenger in her son's automobile.  Officer Westerberg stopped the vehicle and asked the driver to produce his driver's license.  The son informed the officer that he had left his license at home.  The patrolman then asked the son to accompany him to a call box where the officer could contact the Registry of Motor Vehicles and determine whether the motorist had a valid operator's license.  The call box is at the corner of Washington and Union Streets.  The defendant expressed a wish to accompany her son but the officer told her to remain with the automobile.

As the patrolman was making his call, defendant left the car and joined her son. The Registry notified the officer that defendant's son was not a licensed driver. The defendant was asked to return to her son's automobile. She refused and became boisterous and attempted to pull her son away from the officer. Confronted with this development, the officer called police headquarters and asked for assistance.

Help came within a matter of minutes. A police sergeant arrived in a cruiser. Another officer arrived on motorcycle. A crowd began to gather and traffic began to congest. It was decided to put the son in a police van that had also responded to Westerberg's summons. As the officers attempted to place the son in the van, defendant began to shout and curse. At this point, the police changed their plan. The sergeant directed that the mother, rather than the son, be transported in the van to headquarters. As the officers attempted to carry out the sergeant's order, defendant began to flail away at them with her feet. During this episode, she kicked the motorcycle patrolman in the groin thereby knocking him to the ground. It is conceded that this officer received medical treatment and he was unable to perform his usual duties for a period of a "few weeks."

The defendant was tried before a Superior Court jury on an indictment which charged her with violating the provisions of G. L. 1956, §11-5-5. This statute makes it a felony for a person to knowingly and willfully strike and thereby injure a uniformed member of a police department while he is engaged in the performance of his duties. The jury returned a verdict of guilty. The trial justice denied defendant's motion for a new trial. This appeal followed.

Before us, defendant presses several exceptions. Two concern the denials of her motions for a directed verdict and a new trial. The remaining exceptions are to various

rulings made by the trial justice during the course of the trial.

The defendant concedes that she kicked the officer as she was being carried into the police van but she describes her kick as merely an instinctive or reflex action generated either by the excitement of the occasion or by the pain she received when the van door shut on her legs. There was testimony, however, that when defendant kicked the motorcycle officer, she was looking directly at him.

On the state of the record, there is absolutely no need to go to any great length in discussing defendant's exceptions relating to the denial of a motion for a direction and the denial of her motion for a new trial. When considering the motion for a directed verdict, the trial justice was bound to review the evidence and the reasonable inferences flowing therefrom in the light most favorable to the state, taking care not to weigh the evidence or pass on the credibility of the witnesses. State v. Murphy, 107 R. I. 737, 271 A.2d 310; State v. Contreras, 105 R. I. 523, 253 A.2d 612. Here, there was evidence showing the deliberate aim of defendant's foot. The denial of her motion for a directed verdict was correct.

In considering the motion for a new trial, the trial justice was confronted with a conflicting version of what actually occurred. He believed the police. The defendant has failed to convince us that the trial justice overlooked or misconceived material evidence or that he was clearly wrong. State v. Correia, 106 R. I. 655, 262 A.2d 619. The defendant asserts that once she was secured in the van, she was mistreated by the police. She sought to introduce a photograph of her back and a report of her physician. They purported to show that defendant had received contusions of the head, shoulder and lower back. The purpose of this attempt was to show that the harsh treatment accorded defendant by the police caused the reflex "kick"

received by the injured officer. The trial justice refused to allow the introduction of these exhibits into evidence due to their irrelevancy. In making this ruling, he pointed out that the injuries were allegedly received sometime after the kick had been delivered. The determination of the relevancy of evidence is a matter addressed to the sound discretion of the trial court. *State* v. *Glass,* 107 R. I. 86, 265 A.2d 324; *State* v. *Reardon,* 101 R. I. 18, 219 A.2d 767. The picture and the doctor's report were of no significance to the issue of defendant's intent since the alleged beating occurred after the police officer was struck. Therefore, their exclusion was proper.

The last exception concerns the charge given the jury. When the trial justice instructed the jury as to elements of the crime laid out in the instant indictment, when he came to the word "strike," he remarked that there was no need to define the word because "* * * it has the same meaning in the law under this statute as it does and is understood by all of us." Later, the jury returned to the courtroom and asked the trial justice to define the word "assault." The trial justice observed that while one or both of the attorneys used the word "assault" in argument, the statute speaks only of the word "strike." He went on to remark that while a layman considers the word "assault" to mean striking or hitting somebody, an "assault" in its true legal sense means an offer or an attempt to do harm. There is no touching, he said, involved in an assault. He emphasized that the battery is the touching. He pointed out that an assault and battery occurs when the striking takes place. He concluded his supplementary instructions by remarking that "strike" is a word of common usage and that it had "* * * no particular legal definition other than the definition we would find in the ordinary dictionary."

The defendant, in her brief, in arguing in support of this

exception alleges that the trial court erred when it told the jury that he need not define "strike." She invites us to examine a dictionary. If we do, she is confident that we would discover that "strike" is a word of many meanings.

When defense counsel took the exception presently before us, the record shows that he informed the trial justice that the exception was being taken because counsel felt that the court, in explaining the difference between an assault and a battery, had implied that a "strike" differed from a battery. This observation completely overlooked the court's express statement that an assault and battery occurs when the "striking" takes place. In delineating the legal distinction between an assault and a battery, the trial justice merely clarified a question that had arisen in the jury's mind because of counsel's use of the word "assault" when describing the fracas at the call box.

It is fitting at this juncture to reiterate the rule that trial counsel should articulate his exception in such a fashion so as to inform the trial justice of the exact nature of the alleged error—be it one of omission or commission. A properly expressed exception gives the trial justice an opportunity to correct any mistake and thereby save the expense and bother of an appeal. See *Coop* v. *Frederick H. Bishop Co.*, 48 R. I. 227, 136 A. 843.

We acknowledge that Webster's Third New International Dictionary lists over 35 different definitions of the word "strike." An examination of the charge shows that at no time did the defendant take an exception to any one of the trial justice's numerous observations that there was no need to define the word "strike." It "strikes" us that if the defendant was convinced that there was necessity that the jury be further instructed as to the meaning of the "strike" found in the statute, it was incumbent upon her to ask for further instructions. *State* v. *Leavitt*, 103 R. I.

273, 237 A.2d 309; *State* v. *Campbell,* 99 R. I. 57, 205 A.2d 576.

The defendant's exceptions are overruled. Her appeal is denied and dismissed.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, *Henry Gemma, Jr.,* Special Asst. Attorney General, for plaintiff.

*James Cardono,* Public Defender, *Paul E. Kelley,* Asst. Public Defender, for defendant.