STATE

v.

**Jesse Lee ROBERTSON.**

**No. 96–186–M.P.**

Supreme Court of Rhode Island.

Oct. 20, 1999.

Aaron L. Weisman, Providence, for Plaintiff.

Catherine A. Gibran, Paula Lynch Hardiman, Providence, for Defendant.

Present: WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

LEDERBERG, Justice.

This case came before the Supreme Court on a petition for certiorari in which the defendant, Jesse Lee Robertson, sought review of a judgment of convictions for robbery in the second degree and for two assaults with intent to commit murder.[1] The defendant argued that the robbery conviction should be reversed because the state failed to demonstrate that force, a necessary element of robbery as defined in Rhode Island, was used in the crime. The defendant further challenged all three convictions by arguing that the trial justice had erroneously permitted certain questions to be asked of the defendant on cross-examination, over the objections of defense counsel. The defendant took the position that the questions were sufficiently prejudicial as to constitute reversible error. We disagree and affirm the convictions.

### Facts and Procedural History

At around eight or nine on the evening of August 25, 1993, three friends, Americo Disirio (Disirio), Jason Pari (Pari), and Stanley Zab (Zab), were driving with the top down in a convertible in the city of Pawtucket, Rhode Island. After parking on the street in front of a pharmacy, Pari and Zab left the car and entered the pharmacy while Disirio, the driver, remained in the vehicle. Disirio was wearing two gold chains, one of which was a rope chain embellished with a medallion of the letter D. While Pari and Zab were inside the

---

1.  This case is before us on certiorari because notice of appeal was not filed. See *post.*

pharmacy, Disirio was approached by a group of bicycle-riding teenagers, one of whom was defendant, Jesse Lee Robertson, (defendant).

After defendant and another teenager approached Disirio, defendant asked him some questions about the car and his gold chains and whether he was a drug dealer. Disirio testified that these questions made him feel "nervous." When Pari and Zab returned to the car, Zab instructed Disirio to drive away from the store. As Disirio was pulling away, defendant reached into the car and ripped the two gold chains from Disirio's neck. Zab immediately instructed Disirio to drive into the parking lot of a credit union across the street. In order to attempt to retrieve the chains from defendant, Zab exited the vehicle, followed by Pari, and approached defendant. The defendant and Zab exchanged blows, whereupon defendant pulled a knife from his pocket and stabbed Zab in the back. Pari saw the knife and approached the pair to protect Zab. Interposing himself between Zab and defendant, Pari was stabbed three times in his chest, side, and back. Pari and Zab returned to the car, and Disirio drove to the nearby home of a friend to call an ambulance and the police.

Although the Pawtucket police identified defendant as a suspect within a few days, it was not until February 8, 1994, that defendant's photograph was obtained. Within the next two days, Disirio, Zab, and Pari viewed a photo array and identified defendant as the individual who had snatched Disirio's gold chains and stabbed Zab and Pari. The defendant was subsequently arrested and charged with two counts of assault with intent to commit murder, pursuant to G.L.1956 § 11–5–1, and one count of robbery in the second degree, pursuant to G.L.1956 § 11–39–1, as amended by P.L.1991, ch. 201, § 1.[2]

After a jury trial in the Superior Court, a judgment of conviction was entered on November 3, 1995. The defendant received a ten-year sentence on each count, of which four years were suspended with the imposition of a four-year probationary term, to be served concurrently. Notice of appeal was not timely filed by defendant's attorney within twenty days in accordance with Rule 4(b) of the Supreme Court Rules of Appellate Procedure, although defendant, acting pro se, did request a trial transcript. The defendant's representation was assumed by the Office of the Public Defender, and a petition for a writ of certiorari was filed on April 9, 1996. The writ was issued on May 20, 1996.

Additional facts will be discussed as required in the legal analysis of the issues raised.

### Element of Force

At the close of his case, defendant moved for a judgment of acquittal under Rule 29 of the Superior Court Rules of Criminal Procedure. In respect to the charge of robbery in the second degree, the basis for defendant's motion was that the snatching of the necklace, absent evidence of other violence or threat, did not rise to the level of the force that is required to be proven as an element of the crime of robbery in Rhode Island. Thus, defendant has argued, because such force was not expended, the state's proof fell short of the quantum of evidence legally required for conviction. The motion for judgment of acquittal was denied, and defendant has appealed.

◼◼◼◼ When considering a motion for judgment of acquittal, a trial justice must view the evidence in the light most favorable to the state and draw therefrom all reasonable inferences consistent with that defendant's guilt. *State v. Snow*, 670 A.2d 239, 243 (R.I.1996). Upon review of the

---

**2.** After the trial was completed, but before this Court considered this appeal, the robbery statute, G.L.1956 § 11–39–1, was further amended. P.L.1996, ch. 153, § 1. That amendment defined "handicapped" and "elderly" for purposes of distinguishing between first and second degree robbery, and has no bearing on the issue before us.

trial justice's ruling by this Court, the same standard is applied. *State v. Andrade,* 657 A.2d 538, 542 (R.I.1995). The motion for judgment of acquittal may be granted only if the evidence viewed in such a light is insufficient to warrant a jury's verdict of guilt beyond a reasonable doubt. *Id.* This Court will overturn the trial justice's denial of the motion only if the evidence presented by the state is insufficient to warrant a verdict of guilt on a charge of robbery in the second degree.

■■■ It is fundamental that the state is required to present evidence of every element of the crime charged. *State v. Robalewski,* 418 A.2d 817, 820 (R.I.1980). The statutory distinctions between the degrees of robbery and the punishment for each are set forth in § 11–39–1. The statute, however, does not define robbery. This Court has long held that the statute incorporates the common-law definition of robbery. *State v. Innis,* 433 A.2d 646, 649 (R.I.1981); *State v. Reposa,* 99 R.I. 147, 149, 206 A.2d 213, 215 (1965); *State v. Domanski,* 57 R.I. 500, 504, 190 A. 854, 857 (1937). Under common law, robbery "consists of the 'felonious and forcible taking from the person of another of goods or money to any value by violence or putting him in fear.'" *Reposa,* 99 R.I. at 149, 206 A.2d at 215 (quoting 4 William Blackstone, Commentaries *241). A required element of robbery is that "the taking be accomplished by force, violence, or intimidation." *State v. Froais,* 653 A.2d 735, 738 (R.I. 1995). The issue in this case is whether the element of force has been satisfied when the state presented evidence that the taking of the necklace was accomplished by defendant's snatching it from the neck of the victim.

This Court last addressed a similar question in *State v. McCune,* 5 R.I. 60 (1857). The defendant in that case approached the victim, linked arms with him, exclaimed, "Damn you, I will have your watch," and seized the victim's watch, thereby breaking the half-inch-wide silk ribbon on which the victim had worn the watch around his neck. *Id.* The Court found that the taking was accomplished by force sufficient to support a charge of robbery and that the force not only derived from McCune's snatching of the watch but also was evidenced by the manner in which he linked arms with the victim and from his clear statement of felonious intent at the time he took the watch. *Id.* at 61.

Many states have considered the type and the degree of force that is required to support a conviction of robbery. *See, e.g., People v. Taylor,* 129 Ill.2d 80, 133 Ill.Dec. 466, 541 N.E.2d 677 (1989) (finding sufficient force where a chain was snatched from around a neck); *State v. Aldershof,* 220 Kan. 798, 556 P.2d 371 (1976) (finding insufficient force when a purse resting in a lap was snatched); *Commonwealth v. Jones,* 362 Mass. 83, 283 N.E.2d 840 (1972) (finding sufficient force when a purse was snatched from a shoulder); *State v. Sein,* 124 N.J. 209, 590 A.2d 665 (1991) (finding insufficient force when a purse carried under the arm was snatched); *State v. Curley,* 123 N.M. 295, 939 P.2d 1103 (1997) (finding sufficient force when a purse was snatched from a shoulder). Massachusetts has held that there is sufficient force as long as the taking is done in such a way that the victim is aware of the taking while it occurs, regardless of any physical impact on the person of the victim. *Jones,* 283 N.E.2d at 845. Virginia, on the other hand, has held that a sudden snatching of an object does not involve sufficient force except in those cases "when a struggle ensues, where the victim is knocked down, or where the victim is put in fear." *Winn v. Commonwealth,* 21 Va.App. 179, 462 S.E.2d 911, 913 (1995).

The overwhelming majority of states that have considered this issue have held that a snatching involves sufficient force to support a conviction of robbery if the article taken is so attached to the person or the clothes of the victim as to afford resistance. *See, e.g., Smith v. State,* 117 Ga. 320, 43 S.E. 736, 737 (1903); *Taylor,* 133 Ill.Dec. 466, 541 N.E.2d at 679; *Raiford v.*

*State,* 52 Md.App. 163, 447 A.2d 496, 499 (1982), *aff'd in relevant part by* 296 Md. 289, 462 A.2d 1192 (1983); *Sein,* 590 A.2d at 668; *Curley,* 939 P.2d at 1105; *Monaghan v. State,* 10 Okla.Crim. 89, 134 P. 77, 79 (1913).

It is our conclusion that the majority rule better supports the rationale that distinguishes robbery from larceny. Robbery is punished more severely than larceny because the crime presents the risk of harm to the person of the victim and not solely to the victim's property. *Curley,* 939 P.2d at 1106. One early commentary, in discussing robbery, noted that the "[j]eoperdye that a man is in of his lyfe where it [is] so taken awaye from his persone causeth the offence to be greter than [if] it had ben thevysshely stolen." Vol. II *The Reports of Sir John Spelman,* 324 (J.H. Baker ed.1978) (quoting *the boke of justyces of peas,* (1515 ed.), sig. A5v.)). As Blackstone has noted, the force used in a robbery "makes the violation of the person more atrocious than privately stealing." 4 William Blackstone, Commentaries *242.

The risk of bodily injury that underlies the more severe treatment of robbery is present when the item that is being snatched is attached to the body or the clothing of the victim. *See, e.g., State v. Williams,* 202 Conn. 349, 521 A.2d 150, 155 (1987) (where victim whose purse was snatched suffered bruises to her shoulder); *Santiago v. State,* 497 So.2d 975, 976 (Fla. Dist.Ct.App.1986) (situation in which victim whose necklace was snatched suffered scratches on her neck); *McCloud v. State,* 335 So.2d 257, 258 (Fla.1976) (elderly victim fell during purse snatching, the fall resulting in her death); *People v. Santiago,* 62 A.D.2d 572, 405 N.Y.S.2d 752, 754 (N.Y.App.Div.1978) (victim of attempted purse snatching was pulled off subway platform and injured by train, death resulting).

■ Because the forcible taking of an article attached to the body or the clothes of another person creates a risk of harm to that person, such a taking rises to the level of force necessary to support a conviction for robbery. In the case at bar, the prosecutor presented evidence that defendant snatched two chains from the neck of Disirio that were therefore attached to his person so as to afford resistance. Consequently, evidence of sufficient force was present to satisfy the denial of defendant's motion for a judgment of acquittal.

### Cross–Examination

The defendant next argued that the convictions should be vacated because during the cross-examination of defendant, the trial justice permitted the prosecutor to engage in a line of questioning intended to depict defendant as "a violent, drug-pushing, school-skipping juvenile delinquent who [had] nothing better to do than hang out on the street all day and prey upon innocent people." [3] The defendant maintained that the state's line of questioning was inadmissible because the inquiries were irrelevant and that even if they were marginally relevant, the questioning should have been barred or excluded because its prejudicial effect outweighed any slight probative value. The questioning to which defendant objected progressed as follows:

"Q Prior to your recent incarceration, where did you work?

"A I haven't worked.

---

**3.** We note that on direct-examination defense counsel used every effort to depict defendant in the best possible light. These efforts included eliciting from him, often through the use of leading questions, the following facts: that the last thing he did before getting on the airplane to Kentucky was hug and kiss his mother; that almost the first thing he did in Kentucky was write his mother a letter; that he was so frightened on the airplane that he had to cover his eyes and put his head in his lap during takeoff and landing; and that he was awed by the rural environment in which he found himself in Kentucky, especially the horses owned by a neighbor of the family he was visiting.

"Q And did you hang around with friends all day?

"A Most of the time.

"Q Were you in school?

"A Yes.

"Q Did you attend school?

"A Not often.

"Q Why not?

"A I didn't like to go to school.

"Q Who supported you?

"A Supported me?

"[DEFENSE COUNSEL]: Objection, your Honor.

"THE COURT: Please?

"[DEFENSE COUNSEL]: Objection, your Honor.

"THE COURT: I'll allow that.

"A My mother.

"Q You didn't work?

"A No.

"Q You didn't go to school?

"A No.

"Q How did you make your money?

"[DEFENSE COUNSEL]: Objection, your Honor.

"THE COURT: I'll allow it.

"A Selling drugs.

"Q You admit today that you were selling drugs?

"A Yes.

"Q What kind of drugs?

"[DEFENSE COUNSEL]: Objection, your Honor.

"THE COURT: I'll allow it.

"A Crack.

"Q How much drugs would you sell a day?

"A I'm not sure of that.

"Q Who would you sell those drugs to?

"A To people.

"Q Who were you with when you were selling these drugs?

"A Usually myself.

"Q Do you know that drugs is [*sic* ]against the law?

"A Yes.

"[DEFENSE COUNSEL]: Objection, your Honor.

"THE COURT: Sustained. I think you've gone far enough in this direction."

■ We begin our analysis by noting that this Court has long held that decisions regarding the admission or exclusion of evidence on grounds of relevance are left to the sound discretion of the trial justice. *State v. Gabriau,* 696 A.2d 290, 294 (R.I. 1997); *State v. Amado,* 109 R.I. 53, 57, 280 A.2d 324, 326 (1971). We shall disturb the trial justice's decision only if that determination was both an abuse of discretion *and* if the admission of the irrelevant evidence was prejudicial to the rights of the accused. *Gabriau,* 696 A.2d at 294.

■ Because the questions that were asked mentioned defendant's activities as a seller of drugs, the relevance of these questions is controlled by Rule 404(b) of the Rhode Island Rules of Evidence. Under Rule 404(b) "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." Even so, such evidence may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, [or] identity * * *." *Id.* As we noted *ante,* the decision on whether evidence of other crimes is relevant to a permissible purpose is left to the sound discretion of the trial justice, and that decision will not be disturbed absent an abuse of discretion. *Gabriau,* 696 A.2d at 294.

■ A trial justice does not abuse his or her discretion when that discretion " 'has been soundly and judicially exercised * * * in the light of reason applied to all the facts and with a view to the rights of all the parties to the action.' " *Citrone v. SNJ Associates,* 682 A.2d 92, 95 (R.I.1996). Having reviewed the facts of this case, we conclude that the trial justice reasonably could have determined that the evidence of

defendant's "hanging out" and drug dealing were relevant to the question of defendant's identity and his alibi. At trial, defendant's sole defense was that he was on a trip to Kentucky from August 9 to September 22, 1993, and that he therefore could not have been the person who committed the crimes on August 25. The trial justice could have found that the testimony that defendant "hung out" and sold drugs on Slater Street undermined this alibi defense because, as the prosecutor argued, the evidence made it less likely that defendant would take a long trip and leave his "turf" unprotected.

■ Even if we agreed that the questions were irrelevant and that the trial justice abused his discretion by permitting the questions to be asked, we would not reverse the convictions in this case because the questions were not prejudicial to defendant. This Court has held that in order to show prejudice, a reasonable possibility must exist that the improper evidence contributed to a defendant's conviction. *State v. Gallagher*, 654 A.2d 1206, 1211 (R.I. 1995). In order to determine whether this reasonable possibility exists, we must decide what probable impact the improper evidence would have had on an average jury. *State v. Burke*, 427 A.2d 1302, 1304 (R.I.1981). Then, we assume that the improper evidence had the same impact on the jury in the case at bar. *Id.*

After reviewing the entire record of this case, we conclude that no reasonable possibility exists that the challenged questions contributed to defendant's conviction. Our determination rests on two facts. First, each item of information elicited by the disputed questions was made available to the jury by other testimony. In some instances, the information was admitted through defendant's own witnesses in response to defense counsel's questions. In others, the prosecution posed questions to which the defense counsel did not object. In all but one instance, the information was presented to the jury before the challenged questions were asked.

For example, defendant's mother testified that "he didn't go to school." The defendant himself testified on direct examination that "once in awhile [*sic*] I went to school." When asked how he occupied his time, he stated that "I didn't do nothing." The defendant's mother testified that defendant was on probation at the time the crime occurred; defendant also mentioned his probation and referred to his recent release from the Rhode Island Training School for Youth. The police officer who investigated the case testified, without objection from defense counsel, that local residents would speak to the officer only anonymously because they were "in fear of the neighborhood kids, being [defendant] and his friends." The defendant did not object to any of this testimony. Finally, defendant's convictions for drug possession and for domestic assault were properly admitted for impeachment purposes during his cross-examination almost immediately after the challenged questions, but they were followed by a proper limiting instruction given by the trial justice to the jury.

This Court has generally held that when objectionable evidence also has come before the jury through other avenues, the improper admission of the evidence was not prejudicial. *See State v. Dinagen*, 639 A.2d 1353, 1358 (R.I.1994) (impermissible admission ·of mug shots, from which jury could infer prior criminal behavior, was not prejudicial in circumstances in which evidence of prior convictions later came before the jury in other ways); *State v. Carraturo*, 112 R.I. 179, 189, 308 A.2d 828, 833 (1973) (questions were not prejudicial in circumstances in which two earlier witnesses had testified to the same information); *State v. Kennedy*, 84 R.I. 107, 111, 121 A.2d 647, 650 (1956) (cross-examination was not prejudicial where "it was defendant himself who first introduced evidence relating to some of his early history and misfortunes"). In the present case, it may be that the prosecutor was attempting to use these questions to depict defendant

as a dangerous, truant delinquent. The questions he asked, however, would not have contributed to that impression any more than did other information that had already been heard by the jury. Therefore, the questions were not prejudicial to defendant.

Our conclusion that the questions were not prejudicial rests also on the fact that the state presented overwhelming evidence of defendant's guilt. Three eyewitnesses independently identified defendant in a photo array and again in court. Additionally, defendant's alibi was rebutted in four different ways. First, the state presented a witness, a former girlfriend of defendant, who testified to having seen defendant on Slater Street every day during the time he was allegedly in Kentucky. Second, defendant's probation officer testified on direct examination by defense counsel that her records indicated that defendant had come to her office on August 17, 1993, eight days after he had purportedly left for Kentucky. Third, the state presented evidence that during the few weeks after the crimes, defendant's mother stated that defendant was in New Jersey and North Carolina, rather than in Kentucky. Finally, defendant stipulated that he was present at a hearing in Family Court on August 13, 1993, four days after he supposedly left for Kentucky.

This Court has previously held that the admission of impermissible evidence need not be prejudicial in a case in which there is independent overwhelming evidence of a defendant's guilt. *See, e.g., State v. Humphrey*, 715 A.2d 1265, 1276 (R.I.1998) (admission of allegedly involuntary confession not prejudicial when state presented "unanimous, overwhelming, and compelling" evidence of guilt); *State v. Bailey*, 677 A.2d 407, 411 (R.I.1996) (admission of evidence that went beyond crimes charged was not prejudicial "in light of the overwhelming evidence" of the defendant's guilt); *Dinagen*, 639 A.2d at 1358 (impermissible admission of mug shots, from which jury could infer prior criminal behavior, was not prejudicial when state presented strong evidence of the defendant's guilt). Here, the defendant was identified by three eyewitnesses, and his alibi defense was completely discredited. Hence, there is no reasonable possibility that the allegedly improper evidence contributed to the defendant's conviction. Therefore, the challenged questions were not prejudicial, and any error in their admission was harmless beyond a reasonable doubt and did not rise to the level of reversible error.[4]

### Conclusion

In conclusion, therefore, sufficient evidence of force existed to support a judgment of conviction for robbery. In addition, the trial justice did not abuse his discretion in admitting certain questions on cross-examination. Consequently, the petition for certiorari is hereby denied and the writ heretofore issued is hereby quashed. The judgment of the Superior Court is affirmed, and the papers in the case are remanded to the Superior Court with our decision endorsed thereon.

---

4. We note that even if the challenged questions had been irrelevant and prejudicial, arguments on appeal that have not been adequately presented to the trial justice for his or her determination cannot be properly brought before us. *State v. Tempest*, 651 A.2d 1198, 1216 (R.I.1995). Although this defendant objected to the allegedly improper questions, he failed to state any grounds for his objections. Moreover, defendant never raised a R.I.R. Evid. 404(b) argument to the trial justice, never asked the judge to declare a mistrial and never requested a limiting instruction for the jury. Because defendant did not properly seek redress before the trial justice, his argument is not properly before this Court. *Tempest*, 651 A.2d at 1216 (holding that when the defendant objected to a question on grounds of relevance without arguing Rule 404(b), he could not raise Rule 404(b) before the Supreme Court).