STATE OF NORTH CAROLINA v. CALVIN MONTRELLE HARRIS

No. COA07-39

(Filed 16 October 2007)

**Robbery— actual force—necklace snatched from neck**

There was sufficient evidence to support a conviction for common law robbery where defendant snatched a gold necklace from the victim's neck and the necklace broke as the defendant ripped it off. Although North Carolina courts have not addressed the precise issue of whether snatching a necklace from a person's neck involves sufficient actual (as opposed to constructive) force to constitute robbery, a necklace is attached to a person in a way that offers resistance to anyone who would try to pull it from the person's neck. There is a higher risk of bodily injury when a necklace is torn from a person's neck and broken in the process than when a purse is merely grabbed from a shoulder.

Appeal by defendant from judgment entered 16 August 2006 by Judge Kenneth C. Titus in Durham County Superior Court. Heard in the Court of Appeals 10 September 2007.

STATE v. HARRIS

[186 N.C. App. 437 (2007)]

*Attorney General Roy Cooper, by Assistant Attorney General Larissa S. Ellerbee, for the State.*

*Robert W. Ewing for defendant-appellant.*

MARTIN, Chief Judge.

Defendant was convicted by a jury of common law robbery. He appeals from a judgment entered upon the verdict sentencing him to a minimum term of 12 months and a maximum term of 15 months. This sentence was suspended on the condition that defendant serve an active term of 90 days and be placed on probation for 30 months. For the reasons stated below, we find no error in his trial.

The State presented evidence at trial which tended to show that sometime between one and two o'clock in the morning on 29 September 2005, Ansumana Kai Kai ("Kai Kai") was leaving Club 9 on Ninth Street in Durham accompanied by a friend. Kai Kai was wearing a gold necklace with an eagle medallion attached to it. He paid $550 for these items. As Kai Kai reached the parking lot, defendant came from behind him and snatched the necklace from his neck. The necklace broke in half and defendant ran off. Kai Kai asked his friend to go find a police officer and then proceeded to run after defendant. When Kai Kai caught up with defendant, he saw that defendant had six men with him. The men began punching at Kai Kai.

Officer Jason Evans, a police officer with the Durham Police Department, was working off-duty as a security guard for Club 9 that evening. Officer Evans saw defendant running north across the parking lot with a group of men running after him. Officer Evans had noticed defendant earlier that evening when defendant was ejected from Club 9 after becoming involved in an altercation, and again when defendant attempted to re-enter Club 9. Officer Evans informed Investigator D.A. Gaither ("Investigator Gaither"), another Durham police officer working off-duty at Club 9, that there was an altercation in the parking lot, and the two ran over to the area. Investigator Gaither had also seen defendant earlier in the evening when he was ejected from Club 9, and again when defendant attempted to re-enter the club. Investigator Gaither also saw Kai Kai chasing defendant across the parking lot.

Officer Evans and Investigator Gaither proceeded to the parking lot, where they saw defendant standing with a group of men who were yelling and cursing at Kai Kai. Kai Kai identified defendant to

the officers as the person who had stolen his necklace, and defendant put his hands up in the air and began to walk away. Officer Evans and Investigator Gaither asked defendant to stop but he continued to walk away, so they handcuffed defendant and placed him in Investigator Gaither's patrol car. As defendant sat in the patrol car, Kai Kai again identified him as the man who stole his necklace. Officer Evans later searched defendant and did not find the eagle charm or any pieces of the gold chain. The trial court denied defendant's motion to dismiss made at the close of the State's evidence.

Defendant testified on his own behalf. He testified that after he was ejected from Club 9, he waited outside for a friend who had driven him there. When the club closed, his friend called him, and he began jogging to the car. As he did so, Kai Kai began to chase him, grabbed him, and asked him about the chain. The police arrived shortly thereafter. Defendant denied taking the chain. At the close of his evidence, defendant renewed his motion to dismiss, and it was also denied.

Defendant argues that the trial court erred in failing to dismiss the charge of common law robbery based on insufficient evidence. " 'When a defendant moves for dismissal, the trial court is to determine whether there is substantial evidence (a) of each essential element of the offense charged, or of a lesser offense included therein, and (b) of defendant's being the perpetrator of the offense. If so, the motion to dismiss is properly denied.' " *State v. Bellamy*, 172 N.C. App. 649, 656, 617 S.E.2d 81, 87 (2005) (quoting *State v. Earnhardt*, 307 N.C. 62, 65-66, 296 S.E.2d 649, 651-52 (1982)), *disc. rev. denied*, 360 N.C. 290, 628 S.E.2d 384 (2006). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Vick*, 341 N.C. 569, 583-84, 461 S.E.2d 655, 663 (1995). In ruling on a motion to dismiss, the court must view the evidence in the light most favorable to the State. *State v. Benson*, 331 N.C. 537, 544, 417 S.E.2d 756, 761 (1992).

Common law robbery requires proof of four elements: "(1) the felonious, non-consensual taking of (2) money or personal property (3) from the person or presence of another (4) by means of violence or fear." *State v. Hedgecoe*, 106 N.C. App. 157, 161, 415 S.E.2d 777, 780 (1992). Defendant contends that the State failed to present sufficient evidence of the element of force. The force used may be actual or constructive. *State v. Sawyer*, 224 N.C. 61, 65, 29 S.E.2d 34, 37 (1944). "[A]ctual force implies personal violence," and the degree of force used must be sufficient to induce the victim to part with his or her

property. *Id.* Constructive force includes any demonstration of force that puts the victim in fear to the extent that he or she is induced to part with the property. *Id.* In the present case, no threats or other demonstrations of force were made, so we must determine whether there was sufficient actual force.

North Carolina courts have not addressed the precise issue of whether the snatching of a necklace attached to the neck of a person involves sufficient actual force to constitute robbery. We therefore look to other jurisdictions for guidance. The majority of states that have considered the level of force required for robbery have held that a snatching involves sufficient force if the article taken is so attached to the person of the victim as to afford resistance. *See, e.g., Smith v. State*, 43 S.E. 736, 736-37 (Ga. 1903) (finding sufficient force where the defendant snatched the victim's purse, breaking the chain attaching it to her person in the process); *People v. Taylor*, 541 N.E.2d 677, 680 (Ill. 1989) (finding sufficient force where a necklace was snatched from the victim's neck); *Raiford v. State*, 447 A.2d 496, 500 (Md. Ct. Spec. App. 1982), *aff'd in relevant part*, 462 A.2d 1192, 1195-97 (Md. Ct. App. 1983) (finding sufficient force where a purse was "ripped" from the victim's shoulder); *State v. Robertson*, 740 A.2d 330, 334 (R.I. 1999) (finding sufficient force where a necklace was snatched from the victim's neck).

Two cases are particularly persuasive. In *State v. Robertson*, the Supreme Court of Rhode Island held that sufficient force existed to support a conviction for robbery where the defendant grabbed two gold chains from around the victim's neck. *Robertson*, 740 A.2d at 334. The Court stated that "[t]he risk of bodily injury that underlies the more severe treatment of robbery is present when the item that is being snatched is attached to the body or the clothing of the victim." *Id.* The Court concluded that a necklace is so attached to a person that a necklace-snatching involves enough resistance and risk of bodily harm to constitute sufficient force to support a robbery conviction. *Id.*

In *People v. Taylor*, the Supreme Court of Illinois held that sufficient force existed to uphold a conviction for robbery where the defendant snatched a gold chain from the victim's neck and then walked away. *Taylor*, 541 N.E.2d at 680. The Court reasoned that:

> Sufficient force to constitute robbery may be found when the article taken is so attached to the person or clothes as to create resistance, however slight. A person may attach an item to his or her

person or clothing in such a manner that a perpetrator may not take the item without the use of force sufficient to overcome the resistance created by the attachment.

*Id.* at 679 (internal citations and quotations omitted). The Court found that the necklace was attached to the victim's person in such a way that "it offered resistance to anyone who would take it without permission[,]" and that the defendant "had to use force sufficient to overcome this resistance in order to successfully take the necklace." *Id.* at 680. The Court distinguished this fact pattern from a typical purse snatching scenario where the force used would be insufficient to support a conviction for robbery. *Id.* at 680-81. In a typical nonviolent purse-snatching involving no injury to the victim, the Court reasoned, the purse is not as attached to the person and can be grabbed with less resistance. *Id.* at 681.

Defendant argues that our holding in *State v. Robertson*, 138 N.C. App. 506, 509-10, 531 S.E.2d 490, 492-93 (2000), dictates that the evidence in the present case can only support a conviction for larceny from the person. In *Robertson*, this Court held that there was insufficient evidence of actual or constructive force to support a conviction for common law robbery where the defendant snatched the victim's purse from her shoulder without employing any violence or threats to induce her to hand over the purse. *Id.* at 509-10, 531 S.E.2d at 493. We vacated the defendant's conviction for robbery and remanded for entry of a judgment of guilty as to the lesser-included offense of larceny from the person. *Id.* at 510, 531 S.E.2d at 493.

We distinguish *Robertson* from the present case in terms of the level of attachment of the item to the person and the amount of resistance created when the item is snatched. Here, a necklace, not a purse, was snatched, and a necklace is attached to a person in such a way that it offers resistance to anyone who would try to pull it from the person's neck. The necklace was fastened around Kai Kai's neck, and it broke as defendant ripped it off. In *Robertson*, the purse was not fastened to the victim in any way and the purse strap was not broken, indicating that there was less attachment to the person and less resistance than in the present case. *Id.* at 509, 531 S.E.2d at 493. We believe there is also a higher risk of bodily injury when a necklace is torn from a person's neck and broken in the process than when a purse is merely grabbed off a person's shoulder. Of course, a more violent purse snatching could provide the level of force required for a conviction for robbery. *See State v. Watson*, 283 N.C. 383, 384, 196 S.E.2d 212, 213 (1973) (holding that sufficient force existed to sup-

port a conviction for robbery when the defendant snatched the victim's purse from her arm, breaking the purse strap and dislocating the victim's arm).

When the foregoing evidence is considered in the light most favorable to the State, and the State is given every reasonable inference to be drawn therefrom, it shows that defendant used enough force in removing a firmly attached necklace to create resistance and a risk of bodily harm, which is sufficient to support a conviction for robbery.

No error.

Judges STROUD and ARROWOOD concur.