**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

No. 18-6264

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

BOBBY ARION DINKINS,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Martin K. Reidinger, District Judge. (3:08-cr-00254-MR-1; 3:16-cv-00535-MR)

Argued: May 9, 2019                           Decided: July 1, 2019

Before NIEMEYER, KEENAN, and QUATTLEBAUM, Circuit Judges.

Affirmed by published opinion. Judge Keenan wrote the opinion, in which Judge Niemeyer and Judge Quattlebaum joined.

**ARGUED:** Joshua B. Carpenter, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Asheville, North Carolina, for Appellant. Elizabeth Margaret Greenough, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee. **ON BRIEF:** R. Andrew Murray, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

BARBARA MILANO KEENAN, Circuit Judge:

Bobby Arion Dinkins pleaded guilty in 2009 to a federal firearm charge, for which he was sentenced to serve a term of 252 months' imprisonment. His sentence included an enhancement under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1), based in part on his prior convictions in North Carolina for common law robbery and for being an accessory before the fact of armed robbery (the challenged convictions). In 2016, Dinkins filed a motion under 28 U.S.C. § 2255, in which he argued that the challenged convictions no longer qualified as predicate offenses under the ACCA after the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015) (*Johnson II*). After the district court dismissed Dinkins' motion, we granted a certificate of appealability.

Upon our review, we hold that the challenged convictions categorically qualify as violent felonies under the "force clause" of the ACCA. In reaching this holding, we conclude that North Carolina common law robbery qualifies as an ACCA predicate under the Supreme Court's recent decision in *Stokeling v. United States*, 139 S. Ct. 544 (2019), which abrogated our prior holding in *United States v. Gardner*, 823 F.3d 793 (4th Cir. 2016) (holding that North Carolina robbery does not qualify as an ACCA predicate under the force clause). We further hold that a conviction under North Carolina law for being an accessory before the fact of armed robbery qualifies as a violent felony because that offense incorporates the elements of armed robbery, which itself is a violent felony. We therefore affirm the district court's judgment.

2

I.

In 2009, Dinkins pleaded guilty to Hobbs Act robbery, in violation of 18 U.S.C. § 1951, and to being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). In the presentence report, the probation officer listed Dinkins' criminal history, which included prior convictions under North Carolina law for (1) being an accessory before the fact of armed robbery; (2) second-degree burglary; and (3) common law robbery.[1]

Based in part on these convictions, the probation officer recommended that Dinkins be sentenced as an armed career criminal under the ACCA, 18 U.S.C. § 924(e), which mandates a fifteen-year minimum sentence for defendants convicted of a firearm offense who have three or more prior convictions for violent felonies or serious drug offenses. Absent this armed career criminal designation, Dinkins would have been subject to a ten-year maximum sentence for his firearm conviction. *See* 18 U.S.C. § 924(a)(2).

The district court adopted this portion of the presentence report and calculated Dinkins' sentencing guideline range as being between 235 and 293 months' imprisonment. After considering the sentencing factors in 18 U.S.C. § 3553(a) and

---

[1] Dinkins also had a prior conviction for simple possession of cocaine, which the presentence report incorrectly reported as a conviction for possession with intent to sell and deliver cocaine and designated that conviction as a "serious drug offense" within the meaning of the ACCA. Because we conclude that Dinkins' other three convictions qualify as ACCA-predicate violent felonies, any error regarding the classification of his drug offense is harmless. *See United States v. Mills*, 917 F.3d 324, 326 (4th Cir. 2019).

3

rejecting Dinkins' motion for a downward departure, the court imposed a sentence of 252 months' imprisonment with respect to the firearm charge.

In February 2015, Dinkins filed his first motion for post-conviction relief under § 2255, challenging both his conviction and his sentence.[2] The district court dismissed the motion as untimely, because it was filed almost five years after his conviction had become final. *See* 28 U.S.C. § 2255(f) (establishing a one-year limitations period for § 2255 motions, generally beginning from the date the challenged judgment becomes final).

In 2016, Dinkins sought and received authorization to file the present § 2255 motion, arguing that he improperly was designated as an armed career criminal. Dinkins contended that his North Carolina common law convictions for robbery and for being an accessory before the fact of armed robbery did not qualify as violent felonies following the United States Supreme Court's decision in *Johnson II*, which held that a portion of the ACCA's definition of violent felony known as the "residual clause" is unconstitutionally vague. 135 S. Ct. at 2555-57. Therefore, Dinkins argued that his sentence for the firearm charge exceeds the maximum allowed by law.

---

[2] Although Dinkins' first motion was filed under 28 U.S.C. § 2241, the district court in which that motion was filed re-characterized it as a § 2255 motion and transferred the motion to the sentencing court. 28 U.S.C. § 2255(a).

4

The district court dismissed Dinkins' second motion on procedural grounds.[3] Dinkins timely filed a notice of appeal and, after informal briefing, a panel of this Court granted him a certificate of appealability to address "[w]hether Dinkins has prior convictions of three violent felonies and is an armed career criminal in light of the rules announced in [*Johnson II*] and [*Gardner*]." *See* 28 U.S.C. § 2253(c).

## II.

We review de novo a district court's legal conclusions concerning a denial of § 2255 relief, including whether certain prior convictions qualify as violent felonies under the ACCA. *See United States v. Jones*, 914 F.3d 893, 899 (4th Cir. 2019).

## A.

We begin our analysis with an overview of the ACCA. Under this statutory scheme, a defendant qualifies as an armed career criminal and is subject to a mandatory minimum 15-year term of imprisonment if he has three prior convictions for "a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). At the time of Dinkins' sentencing, a crime qualified as a "violent felony" if the offense was "punishable by imprisonment for a term exceeding one year" and

---

[3] Because we affirm the denial of § 2255 relief on the merits of Dinkins' claim, we do not decide whether the district court's procedural ruling was in error. *United States v. Riley*, 856 F.3d 326, 328 (4th Cir. 2017) (explaining that we may affirm the district court's judgment on any grounds apparent from the record).

(i) Ha[d] as an element the use, attempted use, or threatened use of physical force against the person of another (the force clause); or

(ii) [Was] burglary, arson, or extortion, involves use of explosives (the enumerated crimes clause), or otherwise involve[d] conduct that present[ed] a serious potential risk of physical injury to another (the residual clause).

*Id.* § 924(e)(2)(B) (naming conventions added).

In 2015, the Supreme Court in *Johnson II* struck down the ACCA's residual clause as unconstitutionally vague, in violation of the Due Process Clause of the Fifth Amendment. 135 S. Ct. at 2557-60. The Court held that the residual clause did not clearly articulate how to evaluate the risks of injury posed by a crime, thus depriving defendants of fair notice regarding their potential sentence and inviting "arbitrary enforcement by judges." *Id.* at 2557. The Court further held that the force clause and the enumerated crimes clause remained valid as defining the scope of a predicate violent felony under the ACCA. *Id.* at 2563.

In the present case, we observe that neither robbery nor the offense of being an accessory before the fact of armed robbery is listed in the enumerated crimes clause of the ACCA. Thus, after *Johnson II*, Dinkins' challenged convictions may qualify as violent felonies only by satisfying the requirements of the ACCA's force clause.

To determine whether a state crime qualifies as a violent felony under the ACCA's force clause, we apply the "categorical approach," focusing on the elements of the crime of conviction and not on the underlying facts. *United States v. Reid*, 861 F.3d 523, 527 (4th Cir. 2017). Under this approach, we consider whether the state crime at issue has as an element the "use, attempted use, or threatened use of physical force against the person

6

of another." 18 U.S.C. § 924(e)(2)(B)(i); *see Gardner*, 823 F.3d at 803. In evaluating whether a state offense meets this definition, "we look to state law and 'the interpretation of [the] offense articulated by that state's courts.'" *United States v. Bell*, 901 F.3d 455, 469 (4th Cir. 2018) (quoting *United States v. Winston*, 850 F.3d 677, 684 (4th Cir. 2017)). The definition of the term "physical force," however, and the separate question whether the elements of a state offense satisfy that definition, present issues of federal law. *Johnson v. United States*, 559 U.S. 133, 138 (2010) (*Johnson I*); *Bell*, 901 F.3d at 469.

The Supreme Court recently revisited the definition of "physical force" under the ACCA's force clause to determine whether the offense of robbery under Florida law, Fla. Stat. § 812.13(1), constituted a predicate offense under that clause. *See Stokeling*, 139 S. Ct. at 549. The term "physical force" under the ACCA long has been defined as "*violent force*—that is, force capable of causing physical pain or injury to another person." *Johnson I*, 559 U.S. at 140. In *Stokeling*, the Court held that the term "violent force" discussed in *Johnson I* "encompasses robbery offenses that require the criminal to overcome the victim's resistance." 139 S. Ct. at 550.

In arriving at this conclusion, the Court reviewed the history of the ACCA. The Court recognized that the ACCA had incorporated the common law definition of robbery, and that, at common law, a person committed robbery by seizing property from another through use of force sufficient to overcome the victim's resistance. *Id.* at 550-51. Noting that in some instances of robbery only slight force is necessary to overcome a victim's resistance, the Court stated that such force "is inherently 'violent' in the sense

7

contemplated by [*Johnson I*]" because overpowering even a weak-willed victim "necessarily involves a physical confrontation and struggle." *Id.* at 553.

Focusing on *Johnson I*'s use of the word "capable," the Court explained that its definition of violent force is concerned with only the *potential* of the force to cause pain or injury, rather than the likelihood that it will. *Id.* at 554. Thus, the degree of force needed to satisfy the ACCA's force clause need not be "substantial," nor must the altercation between the offender and the victim result in any injury or pain. *Id.* at 553. Rather, a physical contest between two individuals over the possession of property "is itself 'capable of causing physical pain or injury.'" *Id.* (quoting *Johnson I*, 559 U.S. at 140).

This formulation of "physical force" presupposes some amount of resistance on the part of the victim. Thus, a robbery offense that can be committed by the "[m]ere 'snatching of property' will not suffice" to meet the ACCA's definition of "physical force." *Id.* at 555 (citation omitted); *see also United States v. Bong*, 913 F.3d 1252, 1264 (10th Cir. 2019) (concluding that robbery under Kansas law does not constitute a violent felony because that offense can be committed by "purse snatching"). With this framework in mind, we turn to consider the parties' arguments.

B.

Dinkins argues that his predicate convictions for North Carolina common law robbery and for being an accessory before the fact of North Carolina armed robbery do

8

not qualify as violent felonies under the ACCA's force clause.[4]  We consider each offense in turn.

1.

Dinkins contends that his conviction for North Carolina common law robbery is not a violent felony under this Court's decision in *United States v. Gardner*, 823 F.3d 793, 804 (4th Cir. 2016).  The government, however, responds that the Supreme Court's decision in *Stokeling* has abrogated our holding in *Gardner*.  We agree with the government's position.

Under North Carolina law, common law robbery is the "felonious, non-consensual taking of money or personal property from the person or presence of another by means of violence or fear."  *State v. Smith*, 292 S.E.2d 264, 270 (N.C. 1982); *see also State v. Robertson*, 531 S.E.2d 490, 494 (N.C. Ct. App. 2000).  In *Gardner*, we held that this definition does not satisfy the definition of a violent felony under the ACCA's force clause.  823 F.3d at 804.

Relying on state court decisions interpreting that offense, we explained that because "even *de minimis* contact can constitute the 'violence' necessary for a common law robbery conviction under North Carolina law," the minimum conduct necessary to sustain a conviction for that offense did not qualify as "violent force" as defined in

---

[4] There is no dispute that Dinkins' conviction for North Carolina second-degree burglary qualifies as a violent felony under the ACCA's enumerated crimes clause.  *See United States v. Evans*, 924 F.3d 21, 27 (2d Cir. 2019); *see also United States v. Mack*, 855 F.3d 581, 586 (4th Cir. 2017) (recognizing that North Carolina's first-degree burglary offense satisfies the generic definition of burglary under the United States Sentencing Guidelines).

*Johnson I. Id.* at 803-04. Therefore, we held that the minimum degree of actual force necessary to commit robbery under North Carolina law was not "capable of causing physical pain or injury to another person." *Id.* at 804 (quoting *Johnson I*, 559 U.S. at 140).

As explained above, however, the Supreme Court in *Stokeling* held that the term "physical force," as used in the ACCA and as interpreted in *Johnson I*, "does not require any particular degree of likelihood or probability that the force used will cause physical pain or injury; only potentiality." *Stokeling*, 139 S. Ct. at 554. Thus, instead of relying solely on the quantum of force required under the state law, the critical factor under *Stokeling* in determining whether a particular robbery offense satisfies the ACCA's force clause is whether the offense requires that the offender "physically over[come] the victim's resistance, 'however slight' that resistance might be." *Id.* at 550 (citations omitted).

Applying the new framework set forth in *Stokeling*, we conclude that North Carolina common law robbery satisfies the ACCA's physical force requirement. The definition of North Carolina common law robbery mirrors the definition of common law robbery cited by the Supreme Court in *Stokeling* as the "quintessential ACCA-predicate crime." *Stokeling*, 139 S. Ct. at 551. Indeed, in the context of the United States Sentencing Guidelines, this Court has recognized that North Carolina common law robbery is a categorical match with generic common law robbery precisely because it requires the use of force sufficient to overcome a victim's resistance. *See United States v. Gattis*, 877 F.3d 150, 158 (4th Cir. 2017) (applying U.S.S.G. §§ 2K2.1(a)(4)(A) and

10

4B1.2(a)). Moreover, North Carolina's definition of common law robbery is materially indistinguishable from the Florida robbery statute that the Court in *Stokeling* held was a violent felony.[5] *Compare Smith*, 292 S.E.2d at 270 (North Carolina robbery is the "taking of money or personal property from the person or presence of another by means of violence or fear"), *with* Fla. Stat. § 812.13(1) (defining Florida robbery as "the taking of money or other property . . . from the person or custody of another, . . . when in the course of the taking there is the use of force, violence, assault, or putting in fear.").

North Carolina's appellate courts also have explained that common law robbery is committed through the use of *violence*, a term that "common-law authorities" often use interchangeably with the term "force," *Stokeling*, 139 S. Ct. at 551, to "overpower the party robbed or prevent his resisting." *Robertson*, 531 S.E.2d at 493 (quoting *State v. John*, 50 N.C. 163, 169 (5 Jones) (1857)). Thus, in circumstances in which property was taken through a "typical purse-snatching incident," North Carolina courts have held that the act constitutes "larceny, not robbery." *Robertson*, 531 S.E.2d at 493; *see Gattis*, 877 F.3d at 158-59; *cf. State v. Watson*, 196 S.E.2d 212, 213-14 (N.C. 1973) (holding that sufficient force existed to support a conviction for robbery when the defendant snatched the victim's purse from her arm, breaking the purse strap and dislocating the victim's arm).

---

[5] To the extent that our unpublished decision in *United States v. Orr*, 685 F. App'x 263 (4th Cir. 2017), suggests that there is a distinction between North Carolina common law robbery and Florida robbery, that decision did not have the benefit of the Supreme Court's analysis in *Stokeling*. Further, as an unpublished decision, *Orr* is not binding precedent. *Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 219 (4th Cir. 2006).

Although some North Carolina cases have described the actual force necessary for the commission of common law robbery as force "sufficient to compel a victim to part with his property," this language is not materially different from *Stokeling*'s requirement of force sufficient to "overcom[e] a victim's resistance." *Compare State v. Sawyer*, 29 S.E.2d 34, 37 (N.C. 1944) ("[T]he degree of force used [to commit common law robbery] is immaterial, so long as it is sufficient to compel the victim to part with his property."), *and State v. Williams*, 689 S.E.2d 412, 424 (N.C. Ct. App. 2009) ("The force element required for common law robbery requires violence or fear sufficient to compel the victim to part with his property." (citations and internal quotation marks omitted)), *with Stokeling*, 139 S. Ct. at 550 ("[T]he [force] clause encompasses robbery offenses that require the criminal to overcome the victim's resistance."). Compelling a person to part with personal property necessarily requires an act overcoming the victim's resistance to relinquishing that property. Thus, it is difficult to "discern a reasonable scenario in which a defendant might use an amount of force less than that necessary to overcome slight victim resistance in order to compel a person to deliver up property." *United States v. Ash*, 917 F.3d 1238, 1245 n.7 (10th Cir. 2019); *see also United States v. Hammond*, 912 F.3d 658, 662-65 (4th Cir. 2019) (holding that New York robbery, which requires the use or threat of force "for the purpose of . . . compelling the owner of such property . . . to deliver up the property," is a crime of violence under the identical force clause of the Sentencing Guidelines).

Similarly, we do not discern a meaningful distinction between (1) the use or threat of force sufficient to "prevent" a person from resisting a taking; and (2) the force required

12

to "overcome" a person's resistance to that same taking. *See United States v. Doctor*, 842 F.3d 306, 311 (4th Cir. 2016) ("[T]he very purpose of threatening physical force is to prevent a person from resisting the taking."); *United States v. Libby*, 880 F.3d 1011, 1015 (8th Cir. 2018) (same). Simply put, North Carolina's use of slightly different language to describe the force necessary for robbery does not place North Carolina common law robbery beyond the reach of *Stokeling*. *See Taylor v. United States*, 495 U.S. 575, 599 (1990) (explaining that "minor variations in terminology" are irrelevant if a "state statute corresponds in substance" with the ACCA's requirements).

Our conclusion is not altered by Dinkins' reliance on *State v. Chance*, 662 S.E.2d 405 (N.C. Ct. App. 2008) (unpublished). In *Chance*, the defendant pulled a box of cigarettes from the victim cashier, using one hand to grab the box and the other to push the victim's hand off the cigarettes. *Id.* at *3-4. The court found that the defendant used the force of his push "in order to get possession of" the cigarettes. *Id.* at *3. Such contact is not the "merest touching." *Stokeling*, 139 S. Ct. at 553. Rather, "[b]y pushing [the cashier's] hand off the box, [the] defendant *prevented her from resisting*." *Chance*, 662 S.E.2d at *4 (emphasis added). Thus under the plain language of *Chance*, the defendant used force sufficient to overcome resistance by the victim. *See Stokeling*, 139 S. Ct. at 548; *see also id.* at 555 (explaining that because Florida's robbery offense could be committed by a defendant who "grabs the victim's fingers and peels them back," that offense required the use of sufficient force to satisfy the ACCA's force clause).

Accordingly, because North Carolina's case law establishes that the state's common law robbery offense requires the use of force sufficient to overcome the victim's

13

resistance, that offense is encompassed by the holding of *Stokeling* and qualifies as a violent felony under the ACCA's force clause.[6] To the extent that this outcome conflicts with our prior decision in *United States v. Gardner*, 823 F.3d 793, that decision has been abrogated by *Stokeling*.

2.

We next address Dinkins' conviction for the North Carolina common law offense of accessory before the fact of armed robbery. Dinkins contends that his conviction for the inchoate offense of being an accessory before the fact does not qualify as a violent felony under the ACCA's force clause, because (1) the elements of accessory before the fact of armed robbery are separate and distinct from the elements of armed robbery; and (2) the force clause requires a showing that the defendant himself, and not another person, used the requisite force during the commission of the armed robbery. We disagree with his arguments.

---

[6] We observe that there is an alternate means of committing common law robbery in North Carolina, namely, through the use of constructive force or "putting [a victim] in fear." *State v. Sipes*, 65 S.E.2d 127, 128 (N.C. 1951); *see also Gardner*, 823 F.3d at 802-03. Although the parties do not address this issue, the existence of this alternative means does not alter our analysis. North Carolina courts have explained that the constructive force necessary to commit robbery includes threats or demonstrations of force that are "likely to create an apprehension of danger and induce a [person] to part with his property *for the sake of his person*." *Sawyer*, 29 S.E.2d at 37 (emphasis added); *see also State v. Harris*, 650 S.E.2d 845, 847 (N.C. Ct. App. 2007); *State v. Hammonds*, 222 S.E.2d 4, 5 (N.C. Ct. App. 1976). Thus, the alternative means of committing common law robbery in North Carolina is only satisfied when a victim reasonably is put into fear of bodily injury. *See Robertson*, 531 S.E.2d at 493. Such a threat is sufficient to satisfy the ACCA's force clause. *See Doctor*, 842 F.3d at 309-11 (recognizing that the use of even a "slight threat" to "communicate an intent to cause great bodily injury" constitutes the "threatened use of physical force" under the ACCA); *see also United States v. McNeal*, 818 F.3d 141, 153-54 (4th Cir. 2016).

14

To determine whether an inchoate offense qualifies as a violent felony under the ACCA's force clause, "two sets of elements are at issue: the elements of [the inchoate crime] *and* the elements of the underlying . . . offense." *United States v. McCollum*, 885 F.3d 300, 304-05 (4th Cir. 2018) (alteration and omission in original) (quoting *United States v. Dozier*, 848 F.3d 180, 185 (4th Cir. 2017)). Under North Carolina law, "[a]n accessory before the fact is one who was absent from the scene when the crime was committed but who procured, counseled, commanded or encouraged the principal to commit it." *State v. Benton*, 174 S.E.2d 793, 801 (N.C. 1970). An element of being an accessory before the fact is that "the principal committed the [underlying] offense." *State v. Woods*, 297 S.E.2d 574, 577 (N.C. 1982); *State v. Saults*, 242 S.E.2d 801, 804 (N.C. 1978). Thus, contrary to Dinkins' contention, the elements of the substantive crime are incorporated into the North Carolina crime of being an accessory before the fact. *See* N.C. Pattern Jury Instructions § 202.30 (requiring that the prosecution set forth and prove the elements of the underlying crime to which a defendant is charged with being an accessory); *see also State v. Partlow*, 157 S.E.2d 688, 692 (N.C. 1967) (explaining that an indictment for accessory before the fact of armed robbery must "particularize and identify" the facts of the crime underlying the charge).

Additionally, North Carolina adheres to the common law rule that an accessory before the fact is subject to the same punishment as a principal to the underlying crime. *See State v. Gallagher*, 326 S.E.2d 873, 880 (N.C. 1985); *see also State v. Small*, 272 S.E.2d 128, 132 (N.C. 1980), *superseded on other grounds by statute*, N.C. Gen. Stat. § 14-5.2 ("At common law principals in the first degree, principals in the second degree,

15

and accessories before the fact were all guilty of the same felony; they were all parties to the same crime."); *State v. Alston*, 195 S.E.2d 314, 315 (N.C. Ct. App. 1973) ("An accessory before the fact is one who meets every requirement of a principal in the second degree, except that of presence at the time."). Thus, a person convicted as an accessory before the fact cannot complain that he was not effectively convicted of the underlying offense. *See Benton*, 174 S.E.2d at 801; *see also United States v. Groce*, 999 F.2d 1189, 1191-92 (7th Cir. 1993) (holding that a conviction of aiding and abetting a predicate felony is a predicate felony conviction for purposes of the ACCA because an aider and abettor is treated the same as a principal for criminal punishment purposes).

Dinkins' contention that we should not consider the elements of the underlying felony mischaracterizes the nature of his conviction. The inchoate offense of being an accessory before the fact of a particular felony does not exist in the abstract but must be considered in relation to the object crime. *See Dozier*, 848 F.3d. at 185 (noting that certain inchoate offenses "do not set forth a standalone crime"). Because completion of the underlying substantive felony must be proven to sustain a conviction for being an accessory before the fact, we necessarily must evaluate both sets of elements.[7]

Similarly, we are not persuaded by Dinkins' contention that the ACCA's force clause requires proof that the defendant himself used the necessary force. "There is no

---

[7] This fact distinguishes Dinkins' conviction as an accessory before the fact from other inchoate offenses, such as conspiracy, which do not require that the object crime be completed. *See United States v. Robinson*, 627 F.3d 941, 958 (4th Cir. 2010) (explaining that a conviction for conspiracy does not require proof that the substantive crime was actually committed).

16

requirement that the defendant personally use force or threaten the use of force; it is enough that the crime [of] which the defendant was convicted has as an element the use or threatened use of force." *United States v. Presley*, 52 F.3d 64, 69 (4th Cir. 1995), *abrogated on other grounds by Johnson I*, 559 U.S. 133. To hold otherwise would suggest that one who was present aiding and abetting the commission of a crime requiring the use of force, but who did not himself exert any force, could not have committed a predicate offense under the ACCA. Also, such a flawed approach would come close to requiring us, contrary to settled law, to consider the specific conduct of a defendant rather than only the elements of the offense at issue. *See Taylor*, 495 U.S. at 602 ("[Section 924(e)] generally requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense.").

In this case, Dinkins was convicted under North Carolina law of being an accessory before the fact of armed robbery. We previously have held that the offense of North Carolina armed robbery is a violent felony under the ACCA's force clause. *See United States v. Burns-Johnson*, 864 F.3d 313, 320 (4th Cir. 2017). Because a completed act of armed robbery is an element of the offense of being an accessory before the fact of armed robbery under North Carolina law, we conclude that Dinkins' conviction of the inchoate offense is therefore a violent felony under the ACCA's force clause.

## III.

For these reasons, we hold that the North Carolina common law crimes of both robbery and accessory before the fact of armed robbery categorically qualify as violent

17

felonies under the ACCA's force clause. And because Dinkins has three prior convictions for violent felonies, we conclude that he was properly sentenced as an armed career criminal under the ACCA.[8] We therefore affirm the district court's judgment denying Dinkins relief under 28 U.S.C. § 2255.

*AFFIRMED*

---

[8] Because we affirm the district court's judgment, we need not address the government's argument regarding the applicable burden of proof in habeas cases and our decision in *United States v. Winston*, 850 F.3d 677 (4th Cir. 2017).