**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-4525**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JEROME COLLINS,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Robert J. Conrad, Jr., District Judge.  (3:17-cr-00239-RJC-DCK-1)

Argued:  December 11, 2019                    Decided:  March 31, 2020

Before GREGORY, Chief Judge, and FLOYD and THACKER, Circuit Judges.

Affirmed by unpublished opinion.  Judge Thacker wrote the opinion, in which Judge Floyd joined.  Chief Judge Gregory wrote a dissenting opinion.

**ARGUED:**  Melissa Susanne Baldwin, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant.  Anthony Joseph Enright, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee. **ON BRIEF:**  Anthony Martinez, Federal Public Defender, Charlotte, North Carolina, Joshua B. Carpenter, Appellate Chief, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Asheville, North Carolina, for Appellant.  R. Andrew Murray, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY,

Charlotte, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

THACKER, Circuit Judge:

Jerome Collins ("Appellant") pled guilty to possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g). Because the district court determined Appellant had two prior convictions for crimes of violence, it calculated Appellant's base offense level as 24 pursuant to section 2K2.1(a)(2) of the United States Sentencing Guidelines ("Guidelines"). But, on appeal, Appellant argues the district court erred in classifying one of his prior convictions -- a New York conviction for attempted assault in the first degree -- as a crime of violence because, according to Appellant, New York attempt is broader than generic attempt. Because we conclude Appellant's prior New York conviction for attempted assault in the first degree is a crime of violence as defined by the Guidelines' "force clause," we affirm.

I.

In 2017, Appellant pled guilty to possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g). Prior to sentencing, the probation officer prepared a Presentence Investigation Report ("PSR") which identified relevant conduct attributable to Appellant. The PSR identified Appellant had two prior convictions for crimes of violence pursuant to Guidelines section 4B1.2 -- a North Carolina common law robbery conviction and a New York conviction for attempted assault in the first degree, in violation of N.Y. Penal Law section 110.00 and section 120.10(1). Based on these two prior crimes of violence, the Guidelines specified a base offense level of 24. *See* U.S.S.G. § 2K2.1 (2018) (prescribing a base offense level of 24 "if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions" for crimes of violence).

3

Appellant challenged the PSR calculation, arguing his prior New York conviction does not qualify as a crime of violence.[1] Without this crime of violence, Appellant's base offense level would decrease to 20.

At sentencing, the district court overruled Appellant's objection. The district court held the New York conviction "ha[s] the elements sufficient to meet the force clause, and also appears to be largely consistent with aggravated assault so that it meets the enumerated clause provision." J.A. 40–41.[2] After calculating a Guidelines range of 77 to 96 months of imprisonment, the district court sentenced Appellant to 84 months. Appellant timely appealed.

Because Appellant challenges his criminal sentence, we possess jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## II.

Ordinarily, this Court considers "de novo whether a defendant's prior offense qualifies as a crime of violence under the career offender guidelines." *United States v. Riley*, 856 F.3d 326, 327–28 (4th Cir. 2017). However, when an appellant fails to preserve the error by properly objecting below, we review only for plain error. *See United States v. Bennett*, 698 F.3d 194, 200 (4th Cir. 2012). To preserve an issue for appeal, "an objection [or argument] must be timely and state the grounds on which it is based." *In re Under*

---

[1] Although Appellant made different arguments in support of his objection to the district court than he makes on appeal, we need not restate those arguments here because they are immaterial to our decision.

[2] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

4

*Seal*, 749 F.3d 276, 287 (4th Cir. 2014) (alteration in original) (internal quotation marks omitted).

The parties disagree as to whether Appellant properly preserved this issue for appeal. In the district court, Appellant argued New York attempted assault is not a crime of violence because New York *assault* is not a categorical match for generic assault. In this Court, however, Appellant abandoned that argument and argues only that New York *attempt* is broader than generic attempt. Appellant argues his objection to the classification of the offense as a crime of violence was sufficient to preserve the issue. The Government, on the other hand, argues the objection was too generic to properly alert the district court to the true "grounds on which it [was] based." *In re Under Seal*, 749 F.3d at 287.

Because Appellant does not prevail even under the preserved error standard, we need not decide whether Appellant's objection was sufficient to preserve the error. We assume the standard of review is de novo. *See United States v. Zayyad*, 741 F.3d 452, 459 (4th Cir. 2014) (assuming the appellant preserved the issue where he could not prevail even under the presumed error standard of review); *see also United States v. Palacios*, 677 F.3d 234, 245 n.6 (4th Cir. 2012) (same).

III.

A.

The base offense level for a conviction pursuant to 18 U.S.C. § 922(g) is level 24 "if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 2K2.1(a)(2). To define a "crime of violence," the relevant section of the

5

Guidelines cites directly to the career offender Guidelines. *Id.* at § 2K2.1 cmt. n.1. There, a crime of violence is defined as any state or federal offense punishable by imprisonment for a term exceeding one year, that

(1)     has as an element the use, attempted use, or threatened use of physical force against the person of another [the force clause], or

(2)     is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion or the use or unlawful possession of a firearm . . . or explosive material [the enumerated offense clause].

*Id.* § 4B1.2(a). A crime of violence "include[s] the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." *Id.* at cmt. n.1.

To determine whether the offense is a crime of violence under either the force clause or the enumerated clause, we employ the "categorical approach." *See Taylor v. United States*, 495 U.S. 575, 600 (1990); *United States v. Hammond*, 912 F.3d 658, 661 (4th Cir. 2019). The categorical approach "focus[es] solely on . . . the elements of the crime of conviction . . . while ignoring the particular facts of the case." *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016) (citation omitted). "The point of the categorical inquiry is not to determine whether the defendant's conduct *could* support a conviction for a crime of violence, but to determine whether the defendant was *in fact convicted* of a crime that qualifies as a crime of violence." *United States v. McCollum*, 885 F.3d 300, 304 (4th Cir. 2018) (emphases in original) (internal quotation marks omitted).

Applying the categorical approach first requires us to determine "what crime, with what elements, [Appellant] was convicted of." *Mathis*, 136 S. Ct. at 2249. This task is

simplest when the prior offense comes from a statute setting forth a single set of elements, otherwise called an "indivisible" statute. *Id.* at 2248. However, when a statute "list[s] elements in the alternative, and thereby define[s] multiple crimes," the statute is considered "divisible." *Id.* at 2249. When faced with a divisible statute, we apply the modified categorical approach, which allows us to look to a limited class of documents to determine "which statutory phrase was the basis for the conviction." *Johnson v. United States*, 559 U.S. 133, 144 (2010). After determining which elements make up Appellant's crime of conviction, we determine whether the offense categorically matches the federally defined "generic" offense. *Mathis*, 136 S. Ct. at 2249.

For purposes of the force clause, we consider whether the state crime at issue has as an element the "use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). Because our analysis is limited to the conduct the state offense "necessarily involved, . . . we must presume that the conviction 'rested upon [nothing] more than the least of th[e] acts' criminalized." *Moncrieffe v. Holder*, 569 U.S. 184, 190–91 (2013) (quoting *Johnson*, 559 U.S. at 137) (alterations in original). In evaluating whether a state offense meets this definition, "we look to state law and the interpretation of [the] offense articulated by that state's courts." *United States v. Bell*, 901 F.3d 455, 469 (4th Cir. 2018) (internal quotation marks omitted) (alteration in original). The definition of the term "physical force," however, and the separate question of whether

the elements of a state offense satisfy that definition, present issues of federal law. *Johnson*, 559 U.S. at 138.

B.

Appellant's prior conviction was for attempted first degree assault. In New York, a person is guilty of assault in the first degree when,

1. With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument; or

2. With intent to disfigure another person seriously and permanently, or to destroy, amputate or disable permanently a member or organ of his body, he causes such injury to such person or to a third person; or

3. Under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes serious physical injury to another person; or

4. In the course of and in furtherance of the commission or attempted commission of a felony or of immediate flight therefrom, he, or another participant if there be any, causes serious physical injury to a person other than one of the participants.

N.Y. Penal Law § 120.10(1)–(4). Appellant was convicted of attempting to commit assault as it is defined in subsection one. *See id.* § 120.10(1) (requiring a defendant to act "[w]ith intent to cause serious physical injury to another person" and actually "cause such injury

8

. . . by means of a deadly weapon or dangerous instrument").[3] New York criminalizes attempt "when, with intent to commit a crime, [the defendant] engages in conduct which tends to effect the commission of such crime." *Id*. § 110.00.

To determine whether the offense here is a crime of violence, we first evaluate the substantive offense and then consider the effect of the inchoate nature of the offense.

1.

Applying the categorical approach, the state crime necessarily must have as an element the "use, attempted use, or threatened use of physical force against the person of another" to qualify as a crime of violence under the force clause. U.S.S.G. § 4B1.2(a)(1). "[T]he specific intent to inflict bodily injury" is sufficient to meet the mens rea requirements of the force clause. *United States v. Reid*, 861 F.3d 523, 527 (4th Cir. 2017). As for the actus reus, the Supreme Court has interpreted the term "physical force" as "*violent force* -- that is, force capable of causing physical pain or injury to another person." *Johnson*, 559 U.S. at 140 (emphasis in original). An offense which can be committed using only "de minimis physical contact" is not categorically a crime of violence. *United States v. Hammond*, 912 F.3d 658, 661 (4th Cir. 2019) (internal quotation marks omitted).

---

[3] Though there was some argument in the district court as to which subsection was the basis for Appellant's conviction, the district court found he had been convicted of subsection one of New York's first degree assault statute. Appellant has not challenged this aspect of the district court's decision on appeal. Further, because the statute is divisible, our own review of the record also reveals Appellant was convicted of subsection one. Namely, the indictment tracks the language of subsection one, *see* J.A. 67, and the certificate of conviction lists the offense of conviction as § 120.10-1, *see id.* at 64.

Appellant does not contest on appeal that the completed offense of New York first degree assault pursuant to N.Y. Penal Law section 120.10(1) is a crime of violence. First, the offense categorically matches the generic mens rea requirement of the force clause because it requires the specific "intent to cause serious physical injury to another person." N.Y. Penal Law § 120.10(1). Further, the offense categorically matches the actus reus requirement of the force clause because causing serious physical injury certainly requires physical "force capable of causing physical pain or injury to another person." *Johnson*, 559 U.S. at 140. As a result, New York first degree assault pursuant to section 120.10-1 is a crime of violence under the force clause.

The question we are left to answer, and the source of much debate here, is whether *attempted* first degree assault is also a crime of violence.

2.

When a defendant is convicted pursuant to a state's general attempt statute which encompasses all or nearly all substantive crimes, "two sets of elements are at issue: the elements of attempt *and* the elements of the underlying . . . offense." *United States v. Dozier*, 848 F.3d 180, 185 (4th Cir. 2017) (emphasis in original); *see also United States v. Dinkins*, 928 F.3d 349, 358 (4th Cir. 2019). Though we have held that "both the inchoate crime and the underlying offense are subject to [the] categorical approach," *McCollum*, 885 F.3d at 305, we have also recognized that general attempt statutes do not set forth

standalone crimes, *Dozier*, 848 F.3d at 185, and "must be considered in relation to the object crime," *Dinkins*, 928 F.3d at 359.

Because attempt is subject to the categorical approach, its elements must categorically match generic attempt. "Our precedent defines generic attempt as requiring (1) culpable intent to commit the crime charged and (2) a substantial step toward the completion of the crime, which is consistent with the definition of attempt found in the Model Penal Code." *Dozier*, 848 F.3d at 186 (internal quotation marks omitted). Under New York law, "[a] person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime." N.Y. Penal Law § 110.00.

a.

The first point of contention here is whether New York attempt categorically matches the mens rea requirement of generic attempt -- specific intent. Appellant argues it does not. On its face, New York's attempt statute does appear to require specific intent. *See* N.Y. Penal Law § 110.00 ("A person is guilty of an attempt to commit a crime when, *with intent* . . ."). And New York courts have been clear "an attempt to commit a crime consists of [] the intent to commit the crime." *People v. Foster*, 225 N.E.2d 200, 201 (N.Y. 1967). However, Appellant argues New York courts permit defendants to plead guilty to attempt crimes where the substantive offense does not require specific intent, thereby changing the New York definition of attempt.

For example, in *Foster*, the Court of Appeals of New York upheld a defendant's guilty plea to the nonexistent crime of attempted manslaughter in the first degree. 225

11

N.E.2d at 201. Though the Court of Appeals recognized that manslaughter does not require intent and that one could not intend to commit an accidental crime, it held the defendant to the plea because he knowingly accepted the deal in satisfaction of an indictment charging a heavier crime. *See id.* at 201–02. Similarly, in *People v. Martinez*, a jury convicted the defendant of attempted manslaughter in the first degree. 611 N.E.2d 277, 277–78 (N.Y. 1993). There, however, the Court of Appeals overturned the conviction and held that a jury could not find the defendant guilty of each element because one cannot intend manslaughter. *Id.* at 278. The Court of Appeals recognized that it *would* "allow a defendant to plead to a nonexistent crime in satisfaction of an indictment charging a crime with a heavier penalty," but held a defendant could not be indicted or tried on such a charge. *Id.*

Appellant argues this practice of allowing pleas to nonexistent crimes effectively changes the definition of attempt in New York such that it no longer necessarily requires specific intent. The Government avers that New York's acceptance of these pleas is irrelevant to our consideration of attempt, arguing that we need not consider attempt in a vacuum. Instead, the Government argues we should consider attempt "in relation to the object crime," *Dinkins*, 928 F.3d at 359, and determine what mens rea is required for the entire offense of conviction. The difference between these positions is immaterial because in either instance, we hold New York attempt does require specific intent.

Taking Appellant's view first, we disagree that New York's acceptance of nonexistent pleas changes the definition of attempt in New York. Even in cases where New York accepts a legally impossible plea, the courts are clear "[a]n attempt to commit a

12

crime consists of [] the intent to commit the crime." *Foster*, 225 N.E.2d at 201. Further, in *Mathis*, the Supreme Court defined the "elements" of an offense as either "what the jury must find beyond a reasonable doubt to convict the defendant" at trial, or "at a plea hearing, . . . what the defendant necessarily admits when he pleads guilty." 136 S. Ct. at 2248. Though a jury could not convict on a charge of attempted manslaughter, a guilty plea to this charge requires the defendant to "necessarily admit" all of the elements charged, including attempt's element of specific intent.

The dissenting opinion suggests the majority is incorrect in our interpretation of *Foster*. *See* Dissenting Op. at 22–27. In support, the dissent focuses on the New York Court of Appeals discussion of the difference between guilty pleas and trials. *See Foster*, 225 N.E.2d at 201. But the dissenting analysis of *Foster* ends just one sentence short of the operative language. After noting that a guilty plea "presents an entirely different situation" from a jury trial, the *Foster* court continues:

> The alleged infirmity of the plea to attempted manslaughter in the second
> degree in this case arises from the definition of what constitutes an 'attempt'
> under section 2 of the Penal Law. The question on this appeal is whether this
> definition which includes an 'intent to commit a crime' renders the plea taken
> by defendant inoperative, illogical or repugnant and, therefore, invalid. We
> hold that it does not when a defendant knowingly accepts a plea to attempted

13

manslaughter as was done in this case in satisfaction of an indictment charging a crime carrying a heavier penalty.

*Id.*

Here, the New York Court of Appeals recognizes that the defendant pled guilty to a definition of attempt "which includes an 'intent to commit a crime.'" *Id.* Though that might be otherwise "inoperative, illogical, or repugnant and, therefore, invalid" in the context of attempt, the Court held that it was not so here where the defendant knowingly took the plea. *Id.* Thus, contrary to the dissenting opinion, New York demonstrates that it does, in fact, require a defendant to plead guilty to specific intent.

Turning to the Government's view, if we consider attempt in relation to the substantive offense, the result is even more clear. N.Y. Penal Law section 120.10(1) requires a defendant act "with intent to cause serious physical injury to another person." Because attempt requires specific intent to commit the object offense, one *could not* attempt New York first degree assault as defined in this subsection without having specific intent. Thus, there could not be a legally impossible plea to this crime because a defendant would necessarily admit to having the requisite intent by pleading guilty. Taking this view supports the purposes of the categorical approach as well because it reveals, by only considering the elements, that "the defendant was *in fact convicted* of a crime that qualifies as a crime of violence." *McCollum*, 885 F.3d at 304 (emphasis in original).

Accordingly, we hold the mens rea element of New York attempt categorically matches the mens rea required by generic attempt.

14

b.

Finally, we must determine whether New York attempt's actus reus categorically matches the actus reus required by generic attempt.

Generic attempt requires a substantial step toward the completion of the crime. *See Dozier*, 848 F.3d at 186. A substantial step is "a direct act in a course of conduct planned to culminate in commission of a crime that is strongly corroborative of the defendant's criminal purpose." *Id.* (internal quotation marks omitted). Mere preparation is not generally enough, *see id.*, but the defendant "need not be [at] the last possible act before" the completion of crime, *United States v. Pratt*, 351 F.3d 131, 136 (4th Cir. 2003). To determine whether a defendant has taken a substantial step, we must "assess how probable it would have been that the crime would have been completed" absent intervening circumstances. *United States v. Engle*, 676 F.3d 405, 423 (4th Cir. 2012) (citing *Pratt*, 351 F.3d at 136).

Pursuant to New York's general attempt statute, a defendant must "engage[] in conduct which tends to effect the commission of [the] crime." N.Y. Penal Law § 110.00. Appellant argues this statute is broader than generic attempt because it punishes conduct that falls short of a "substantial step" by only requiring conduct that is "potentially and immediately dangerous." Appellant's Br. 12–13 (citing *People v. Mahboubian*, 543 N.E.2d 34, 48 (N.Y. 1989)). However, New York has clarified that its standard requires "conduct that came dangerously near commission of the completed crime." *People v.*

15

*Denson*, 42 N.E.3d 676, 685 (N.Y. 2015)); *see also People v. Rizzo*, 158 N.E. 888, 889 (N.Y. 1927).

New York's highest court has described this standard as "more stringent than the Model Penal Code 'substantial step' test," which has been adopted by this court. *People v. Acosta*, 609 N.E.2d 518, 521 (N.Y. 1993). The First, Second, and Ninth Circuits have agreed. *See United States v. Davis*, 873 F.3d 343, 345 (1st Cir. 2017); *United States v. Thrower*, 914 F.3d 770, 776–77 (2d Cir. 2019), *cert. denied*, No. 19-5024, 2019 WL 4923513 (Oct. 7, 2019); *United States v. Rivera-Ramos*, 578 F.3d 1111, 1115 (9th Cir. 2009) (explaining, "[t]o this day, the definition of 'attempt' in New York requires a *stronger* showing" than the Model Penal Code). We see no reason to disagree with our sister circuits on this point and therefore hold that New York attempt does require a substantial step.

## C.

In sum, we hold Appellant's prior New York conviction for attempted assault in violation of N.Y. Penal Law section 120.10(1) is a crime of violence pursuant to the force clause because it "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). The elements of New York attempt categorically match generic attempt, and subsection one of the assault statute requires specific intent and violent force. And because the offense is a crime of violence pursuant to the force clause, we need not consider whether it also satisfies the enumerated clause.

16

IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*

GREGORY, Chief Judge, dissenting:

This should be a straightforward case. As the majority recognizes, when evaluating inchoate crimes under the force clause, this Court's precedent instructs us that "both the inchoate crime and the underlying offense are subject to [the] categorical approach." Maj. Op. at 10 (quoting *United States v. McCollum*, 885 F.3d 300, 305 (4th Cir. 2018)); *see also McCollum*, 885 F.3d at 303 ("precedent directs that we consider the inchoate crime . . . and its object independently"). Here, Appellant does not dispute that the elements of the underlying crime (aggravated assault) is a categorical match with his New York offense. Rather, he only contends that the elements of the inchoate aspect (attempt) is not a categorical match. Our precedent requires a defendant to act with the specific intent to commit the underlying crime. *United States v. Dozier*, 848 F.3d 180, 185 (4th Cir. 2017). New York, however, permits defendants to plead guilty to offenses when they do not— indeed, cannot—possess the specific intent to commit the underlying crime. *See, e.g*, *People v. Guishard*, 789 N.Y.S.2d 332, 332 (2005) ("Although the crime of attempted assault in the first degree is a legal impossibility, a defendant may plead guilty to a nonexistent crime."); *see also Dale v. Holder*, 610 F.3d 294, 302 (5th Cir. 2010) (noting "New York courts' willingness to accept guilty pleas to hypothetical crimes, including that of attempted felony assault"). Because New York attempt does not categorically require specific intent, Appellant's prior attempt offense is overbroad. As a result, we should

18

reverse the district court's holding that Appellant's New York offense is a categorical match with the generic characterization of attempted aggravated assault.[1]

I respectfully dissent from the majority's holding to the contrary.[2]

I.

The principal difference between the majority and me is how we interpret New York's "attempt" statute in light of its practice of accepting guilty pleas for attempt crimes lacking specific intent. Oddly enough, the majority recognizes New York's peculiar approach of accepting guilty pleas to nonexistent crimes,[3] recognizes that this approach begets a practice of accepting pleas for attempt crimes where specific intent could not be present,[4] and *presumably* recognizes that the underlying conviction at issue here was in

---

[1] As the majority notes, the parties also dispute whether Appellant properly preserved this issue for appeal. Maj. Op. at 5. Although Appellant now changes his argument challenging his criminal history score, the Supreme Court has explained that "[o]nce a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below." *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992). This Court has followed this reasoning in cases involving challenges to a defendant's criminal history score. *See United States v. Robinson*, 744 F.3d 293, 300 n.6 (4th Cir. 2014) ("Although [Petitioner] did not make this precise argument before the district court, [Petitioner] did challenge his criminal history score, and thus preserved his claim."). Because Appellant presented a variation of this argument challenging his criminal history score below, he properly preserved his claim. Therefore, de novo review is appropriate here.

[2] Because I agree with Collins that New York attempt does not require specific intent, I would not reach the question of whether New York law requires a substantial step towards the completion of the crime.

[3] See Maj. Op. at 11–12 (discussing a case where "New York upheld a defendant's guilty plea to the nonexistent crime of attempted manslaughter in the first degree").

[4] See Maj. Op. at 12 ("one could not intend to commit an accidental crime").

19

fact resolved by plea[5].  Yet, rather than concluding that—at least in the context of guilty pleas—New York does not require specific intent, the majority instead "hold[s] New York attempt *does* require specific intent."  Maj Op. at 12 (emphasis added).  Why?

The majority's brief explanation does not tell us much, and what it does say simply fails to stand up against reason.  The majority begins its analysis by rightly noting that "[o]n its face, New York's attempt statute does appear to require specific intent."  Maj. Op. at 11.  But, of course, "[o]ur inquiry does not end with th[e] statutory language." *Dozier*, 848 F.3d at 184.  "To the extent the statutory definition of a prior offense has been interpreted by the state's highest court, this interpretation informs and constrains our analysis of the state law." *Id.*

Looking at the relevant caselaw from New York courts, it is undeniably clear New York extends attempt liability to defendants who lack the specific intent to commit the underlying crime.  As the Fifth Circuit points out, "[a]lthough New York law recognizes attempt liability only for crimes that involve a *mens rea* of specific intent—as opposed to crimes of recklessness and crimes with no *mens rea* element such as felony assault—New York courts permit convictions by plea to hypothetical or legally impossible offenses such as attempted recklessness." *Dale*, 610 F.3d at 302.  For example, New York does not permit a defendant to be tried and convicted of an attempted reckless assault. *See id.* (citing *People v. Williams*, 338 N.Y.S.2d 980 (1972) (overturning a jury conviction for attempted reckless assault because the relevant subsection contained no element of intent)).  Yet, New

---

[5] See J.A. 64 (Appellant's New York Certificate of Conviction).

York courts permit a defendant to plead guilty for crimes of attempted recklessness. *Dale*, 610 at 302 (citing *Torres v. McGrath*, 407 F. Supp. 2d 551, 561–62 (S.D.N.Y. 2006) (denying petitioner's habeas petition where he pleaded guilty to "attempted reckless endangerment in the first degree in violation of [New York] Penal Law §§ 110.00 and 120.25")). Indeed, a survey of cases demonstrates New York courts' willingness to accept guilty pleas to hypothetical attempt crimes where it *would be impossible* for a defendant to possess the specific intent to commit the underlying crime. *See id.* (citing *People v. Guishard*, 789 N.Y.S.2d 332 (2005) (affirming plea conviction to attempted assault in the first degree even though the crime was a "legal impossibility"); *People v. Barker*, 635 N.Y.S.2d 383 (1995) (sustaining plea conviction to the "non-existent crime" of attempted first-degree manslaughter, but noting that "a jury verdict convicting a person of that crime would be invalid"); *In re Maldonado*, 516 N.Y.S.2d 673, 674 (1987) ("Like attempted felony murder, there is no such crime as attempted felony assault . . . [but a] different result may be reached where the conviction of an attempt to commit a crime, itself not involving intent, is obtained by way of a plea of guilty.")); *see also People v. Johnson*, 675 N.E.2d 1217 (N.Y. 1996) (noting New York courts approve "plea[s] to the technically nonexistent crime of an attempt to commit a specific crime which, by definition, is committed without intent").

Despite its logical inconsistency, this convention is endorsed by the New York Court of Appeals because "the practice of accepting pleas to lesser crimes is generally intended as a compromise in situations where conviction is uncertain of the crime charged." *People v. Foster*, 225 N.E.2d 200, 202 (1967) (internal citation omitted). Since this bargain

21

is normally "struck for the defendant's benefit," New York has concluded, "[t]he judgment entered on the plea in such situation may be based upon no objective state of facts." *Id.* Consequently, New York courts permit defendants to plead guilty to attempt crimes when the defendants do not—and, in some cases, cannot—possess the specific attempt to commit the underlying crime. Therefore, at least when it comes to plea bargains, New York attempt statute is overbroad. And the district court's opinion should be reversed.

## II.

The majority justifies a contrary conclusion only by turning its head to this practice of accepting pleas for attempt crimes when specific intent is absent and misinterpreting the language it borrows from caselaw.

First, the majority errs by attempting to rely on what the New York Court of Appeals says—not what it does. In rejecting Appellant's argument that New York's acceptance of legally impossible pleas extends attempt liability to crimes where specific intent is absent, the majority writes: "Even in cases where New York accepts a legally impossible plea, the courts are clear '[a]n attempt to commit a crime consists of [] the intent to commit the crime.'" Maj. Op. at 12–13 (quoting *Foster*, 225 N.E.2d at 201). This misses the point. If a court accepts a guilty plea to a legally impossible attempt crime lacking specific intent, then the court is *demonstrating* that it extends attempt liability to defendants who lack specific intent to commit the crime. It wouldn't matter what the court *says* it's doing in the process. By permitting plea bargains in attempt cases where a defendant does not have the

specific intent to commit the underlying crime, New York is interpreting its attempt statute to not require specific intent in the context of plea bargaining.

This alone would be enough to reject the majority's position. However, the majority's error is compounded by its misreading of what the New York Court of Appeals actually says in *Foster*. The majority interprets the quoted language above as an indication that New York insists on construing its attempt statute to require specific intent even when a defendant pleads guilty to a legally impossible attempt offense. But *Foster* says exactly the opposite. Rather than holding that specific attempt is required when courts accept a legally impossible plea, the quoted language comes at a moment when the *Foster* Court is juxtaposing trials (which require specific attempt) with plea bargains (which do not) and explaining its broader interpretation of attempt when dealing with the latter. This is abundantly clear from the context in which the quote arises:

> The defendant relies upon *People v. Brown* (21 A.D.2d 738, 249 N.Y.S.2d 922) in support of his position. In *Brown* the defendant was convicted, pursuant to a jury verdict, of the crime of attempted manslaughter, having been indicted for attempted murder in the first degree. The Appellate Division modified, holding: '*An attempt to commit a crime consists of (1) the intent to commit the crime*; (2) the performance of an act toward the commission and (3) failure to consummate. There must be an intent to commit a specific crime in order to constitute an attempt (*People v. Moran*, 123 N.Y. 254, 257, 25 N.E. 412, 10 L.R.A. 109, * * *). An attempt to commit manslaughter is apparently a contradiction because the specific crime of manslaughter involves no intent and, accordingly, an intention to commit a crime whose distinguishing element is lack of intent is logically repugnant.' (21 A.D.2d 738, 739, 249 N.Y.S.2d 922, 923.) There is no doubt that the above case would be dispositive of this appeal if we were faced with an appeal from a jury verdict.

*Foster*, 225 N.E.2d at 201 (emphasis added). But *Brown* was not dispositive because *Foster* was about a plea, not a trial. *Id.* ("In our case, however, the charge in the indictment

23

is manslaughter i[n] the first degree and a plea was taken to attempted manslaughter in the second degree as a lesser included crime."). Thus, the court concluded that "[t]his presents an entirely different situation." *Id.* Rather than providing proof for the majority's position, the quoted language from the New York Court of Appeals does just the opposite: it shows that, unlike trials, New York courts do not insist on specific intent being present in the context of plea bargains. Therefore, contrary to what the majority asserts, New York attempt does not require specific intent.

The flaws in the majority opinion do not end there. The majority's attempt to put this case in the context of *Mathis v. United States*, 136 S. Ct. 2243 (2016), also misses the mark. While attempting to explain the elements of New York attempt, the majority writes, "the Supreme Court defined the 'elements' of an offense as either 'what the jury must find beyond a reasonable doubt to convict the defendant' at trial, or 'at a plea hearing, . . . what the defendant necessarily admits when he pleads guilty.'" Maj. Op. at 13 (quoting *Mathis*, 136 S. Ct. at 2248).[6] The majority then jumps to its conclusion: "Though a jury could not convict on a charge of attempted manslaughter, a guilty plea to this charge requires the defendant to 'necessarily admit' all of the elements charged, including attempt's element of specific intent." Maj. Op. at 13. In other words, rather than looking at New York's plea bargain practice as an effort to extend attempt liability to defendants who lack specific

---

[6] Of course, typically what a jury would have to prove in trial and what a defendant necessarily admits when he pleads guilty is the same thing. And it is likely that the Supreme Court did not intend for these to set out separate standards.

24

intent, the majority instead says that a defendant who pleas to an impossible offense "necessarily admits" to all of the elements charged.

This position is unsound. "'Elements' are the 'constituent parts' of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction'" *Mathis*, 136 S. Ct. at 2248 (quoting Black's Law Dictionary 709 (10th ed. 2014)). As an impossible offense, the majority is correct to note that a jury could not convict on the hypothetical charge of attempted manslaughter. But the majority's erroneous shift to say that a defendant "necessarily admits" to all the elements when he pleads guilty to an impossible offense is befuddling. An "admission" is "an acknowledgment that facts are true." Black's Law Dictionary (11th ed. 2019). However, legally impossible offenses by their very nature cannot be true. *See id.* (defining impossibility as "[t]he fact or condition of not being able to occur, exist, or be done"); *see also Knapik v. Ashcroft*, 384 F.3d 84, 92 (3d Cir. 2004) ("Attempted reckless endangerment is not a crime involving moral turpitude because, categorically speaking, the concept makes no sense. Attempt (necessarily requiring intent to commit a crime) is inconsistent with recklessness (which, by definition, implies acting without intent)."). It follows, then, that a defendant cannot necessarily admit to an impossible offense—acknowledging that the facts are true in a legally impossible offense simply makes no sense. The majority's conclusion that a defendant necessarily admits to possessing specific intent when pleading to an impossible offense is thus a clear distortion of what the *Mathis* Court had in mind when defining elements of a crime. Logic dictates that a defendant does not necessarily admit to possessing specific intent when pleading

25

guilty to impossible offenses such as attempted manslaughter and attempted recklessness. The majority errs in concluding otherwise.

## III.

The majority claims additional language in *Foster* supports its view that "[e]ven in cases where New York accepts a legally impossible plea, the courts are clear '[a]n attempt to commit a crime consists of [] the intent to commit the crime.'" Maj Op. at 12–14. In making its case, the majority argues that my analysis of *Foster* "ends just one sentence short of the operative language." Maj. Op. at 13. Purporting to provide a more complete picture, the majority contends that the following language from *Foster* proves that New York "does, in fact, require a defendant to plead guilty to specific intent" during a plea to an impossible offense:

> The alleged infirmity of the plea to attempted manslaughter in the second degree in this case arises from the definition of what constitutes an 'attempt' under section 2 of the Penal Law. The question on this appeal is whether this definition which includes an 'intent to commit a crime' renders the plea taken by defendant inoperative, illogical or repugnant and, therefore, invalid. We hold that it does not when a defendant knowingly accepts a plea to attempted manslaughter as was done in this case in satisfaction of an indictment charging a crime carrying a heavier penalty.

Maj. Op. at 13–14 (quoting *Foster*, 225 N.E.2d at 201).

This language—and, indeed, the *Foster* opinion as a whole—is a far cry from a "clear" statement that a plea to a logically impossible attempt offense requires specific intent to commit the crime. As explained above, the only time the *Foster* Court comes close to making any such statement is when it quotes another case from which it

26

distinguishes itself. That, by itself, should reduce confidence in the majority's interpretation. In addition, however, the language quoted by the majority concerns itself with only the question of whether a guilty plea to an impossible offense is valid, not whether specific intent must be present when pleading to an impossible offense. If any rule could be derived from this language it is not that a defendant who pleads guilty to a logically impossible offense possesses specific intent, but rather that a logically impossible plea will be sustained when a defendant knowingly accepts the plea to avoid a higher penalty. The majority's conclusion that *Foster* supports the position that specific intent is required when a defendant pleads guilty to a legally impossible attempt offense is unfounded. And, perhaps most importantly, it directly contradicts subsequent New York caselaw that interprets *Foster* as permitting pleas to impossible attempt offenses when specific intent is lacking. *See, e.g.*, *Johnson*, 675 N.E.2d at 1219 ("Following *People v. Foster*, [] we have approved of a plea to the technically nonexistent crime of an attempt to commit a specific crime *which, by definition, is committed without intent*.") (emphasis added), *In re Maldonado*, 516 N.Y.S.2d at 674 (citing *Foster* for the proposition that "[l]ike attempted felony murder, there is no such crime as attempted felony assault . . . [but a] different result may be reached where the conviction of an attempt to commit a crime, *itself not involving intent*, is obtained by way of a plea of guilty") (emphasis added).

IV.

The Government's attempt to rescue the district court's opinion is also unavailing. The Government asks us to consider attempt in conjunction with its substantive offense and conclude that Appellant was convicted of committing a crime of violence in New York.

27

But this overlooks that "precedent directs that we consider the inchoate crime . . . and its object *independently*." *McCollum*, 885 F.3d at 303 (emphasis added). This means the underlying crime *and* the inchoate aspect have to match with the relevant generic offense. When the inchoate aspect is overbroad, one cannot borrow elements from the underlying crime to try to fill in the picture. If this was permissible, then *McCollum*'s conclusion that "conspiracy to commit murder in aid of racketeering is not a 'crime of violence' since it does not require an overt act," *id.*, would be incoherent. Murder in aid of racketeering clearly requires an overt act. *See* 18 U.S.C.A. § 1959 (explaining the necessary activities a defendant must engage in to commit violent crimes in aid of racketeering). And if a court was permitted to use that element to supplement conspiracy's lack of an overt act requirement, then *McCollum* would likely have come out the other way. Contrary to what the Government requests, our precedent requires us to analyze the inchoate offense and the underlying offense independently.

This does not mean that we consider these elements "in a vacuum." When the inchoate offense requires the completion of the underlying offense, the nature of the conviction demands we consider the elements of the underlying offense and the inchoate aspect in tandem. Thus, in *United States v. Dinkins*, we wrote that "[b]ecause completion of the underlying substantive felony must be proven to sustain a conviction for being an accessory before the fact, we necessarily must evaluate both sets of elements." 928 F.3d 349, 359 (4th Cir. 2019). But we wrote this while understanding that because accessory before the fact crimes depend on the underlying offense, they are in a different posture than other inchoate offenses: "This fact distinguishes Dinkins' conviction as an accessory

28

before the fact from other inchoate offenses, such as conspiracy, which do not require that the object crime be completed." *Id.* at 359 n.7 (internal citation omitted). Like conspiracy, attempt does not require that the underlying offense be completed. *See United States v. Neal*, 78 F.3d 901, 907 (4th Cir. 1996) ("If completion of a crime was a necessary predicate to criminal prosecution, an attempt would never be criminal."). Thus, it does not lend itself to the *Dinkins* analysis. New York's attempt statute and its aggravated assault statute must be considered independently.

V.

In sum, our precedent provides a straightforward path for district courts to decide when inchoate state offenses are a categorical match with their generic counterparts. *Dozier* states "[w]here, as here, the defendant is convicted under a state's general attempt statute, one embracing all (or nearly all) possible substantive crimes, two sets of elements are at issue: the elements of attempt and the elements of the underlying, attempted offense." 848 F.3d at 185. *McCollum* explains, when examining whether an offense is overbroad, "we consider the inchoate crime . . . and its object independently." 885 F.3d 303. And *Dinkins* clarifies that only when an inchoate offense is predicated on the completion of the underlying offense do we interpret "the elements of the substantive crime [as] incorporated into the [inchoate offense]." 928 F.3d at 358. Those cases resolve this one. Unlike generic attempt, New York law extends attempt liability to cases where defendants do not possess the specific attempt to commit a crime. Therefore, New York's

29

attempt statute is overbroad. The district court erred when concluding otherwise. Accordingly, I cannot join the majority's opinion.

I respectfully dissent.